**WARREN COUNTY COMBINED HEALTH DISTRICT, Appellant,**

v.

**RITTENHOUSE et al., Appellees.**

[Cite as *Warren Cty. Combined Health Dist. v. Rittenhouse* (1997), 117 Ohio App.3d 97.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA96–06–048 and CA96–06–049.

Decided Jan. 21, 1997.

98

*Timothy A. Oliver,* Warren County Prosecuting Attorney, and *Carolyn A. Duvelius,* Assistant Prosecuting Attorney, for appellant.

*James Sheets,* for appellee Kurt Rittenhouse.

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A.,* and *Ronald Ruppert,* for appellee Phillip Carter.

POWELL, Judge.

Defendants-appellees, Kurt Rittenhouse and Phillip Carter, are residents of Warren County, Ohio, and each owns a Canadian cougar. In March 1995, appellees were contacted by the Warren County Combined Health District ("WCCHD") and advised that they were prohibited from owning or harboring the cougars by Sections 8(A), 8(C), and 9(A) of the Warren County Combined Health District Rabies Control Regulation ("Rabies Control Regulation"). Section 8(A) of the Rabies Control Regulation provides that "no person shall own, harbor, sell, feed, import or otherwise attempt to exercise any control over a[n] * * * exotic animal." [1] WCCHD ordered appellees to remove the cougars from Warren County or to humanely destroy the animals. Appellees did not comply with the administrative order.

1. Section 8 of the Rabies Control Regulation was subsequently amended effective August 1, 1996.

On April 20, 1995, WCCHD brought suit against appellees to enforce the Rabies Control Regulation. A bench trial was held in the Warren County Court of Common Pleas on February 28, 1996. The trial court held that the cougars owned by appellees were not "exotic animals" within the meaning of Section 8(A) of the Rabies Control Regulation because they were domesticated. The trial court also held that Section 9(A) of the Rabies Control Regulation was unconstitutional because it granted the health commissioner unbridled discretion to seize and possibly destroy any animal he may consider vicious or dangerous. WCCHD now appeals setting forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred in holding that because the individual cougars in question are 'tame,' the cougars are not exotic animals prohibited by Section 8 of the Warren County Combined Health District Rabies Control Regulation.

"Assignment of Error No. 2:

"The trial court erred in ruling that Section 9 of the Warren County Combined Health District Rabies Control Regulation is unconstitutional.

"Assignment of Error No. 3:

"The trial court erred in finding evidence that the Rabies Control Regulation is being applied unevenly and arbitrarily because the record is absolutely devoid of any evidence that (1) any ostriches, buffalos, and chimpanzees exist in the WCCHD, and (2) no efforts have been made to bar such animals under the rabies control regulation."

In its first assignment of error, WCCHD argues that appellees are prohibited from owning or harboring the cougars under Section 8(A) of the Rabies Control Regulation because the cougars are "exotic animals." Section 1 of the Rabies Control Regulation defines "exotic animal" as follows:

"The following definitions shall apply in the interpretation and enforcement of these regulations:

" * * *

"(M) The term 'exotic animal' shall mean any non-domesticated animal, including ferrets, which *is not* indigenous to the State of Ohio and which is capable of transmitting rabies." (Emphasis *sic*.)

All of the evidence presented at trial indicates that Canadian cougars are not indigenous to Ohio and that they are capable of transmitting rabies. Therefore, the only issue we must address in order to determine whether the cougars are "exotic animals" within the meaning of Section 8(A) is whether they are wild or domesticated.

The law divides animals into two classes, domesticated animals, or *domitae naturae*, and wild animals, or *ferae naturae*. "Domestic animals are those which are naturally tame and gentle, or which by long association with man have become thoroughly domesticated and are now reduced to such a state of subjection to his will that they no longer possess the disposition or inclination to escape." *Harris v. Rootstown Twp. Zoning Bd. of Appeals* (1975), 44 Ohio St.2d 144, 149, 73 O.O.2d 451, 453–454, 338 N.E.2d 763, 766. Wild animals are those which possess a "wild nature or disposition and so require to be reclaimed and made tame by art, industry, or education or else must be kept in confinement to be brought within the immediate power of the owner." *Id.* "The fact that a particular animal is kept for a socially valuable purpose does not prevent it from being a wild animal; the test is whether the animals are *as a class* recognized by custom as devoted to the service of mankind." (Emphasis added.) 3 Restatement of the Law 2d, Torts (1977) 10, Section 506, Comment *a.* See, also, *Newman v. Cleveland Museum of Natural History* (1944), 143 Ohio St. 369, 378–379, 28 O.O. 321, 324–325, 55 N.E.2d 575, 579.

In *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317, the Ohio Second District Court of Appeals considered whether a lion is a wild animal for purposes of imposing tort liability. The court reasoned:

"Where wild animals, such as lions, are involved, the common law imposes strict liability upon owners, keepers or harborers, following *Rylands v. Fletcher* (1868), L.R. 3 H.L. 330. *Morrison v. Nolan Amusement Co.* (May 1, 1985), Muskingum App. No. CA–84–31, unreported, 1985 WL 9216 (Turpin, J., dissenting). 'No member of such a species, however domesticated, can ever be regarded as safe, and liability does not rest upon any experience with the particular animal.' Prosser & Keeton on Torts (5 Ed.1984), 542, Section 76." *Id.* at 557, 671 N.E.2d at 323–324.

Numerous appellate decisions from other jurisdictions have relied on similar rationales to reach analogous results. See *Burns v. Gleason* (C.A.5, 1987), 819 F.2d 555 (jaguar); *Parker v. Cushman* (C.A.8, 1912) 195 F. 715 (lion); *Candler v. Smith* (1935), 50 Ga.App. 667, 179 S.E. 395 (lion); *Stamp v. Eighty–Sixth St. Amusement Co.* (1916), 95 Misc. 599, 159 N.Y.S. 683 (lion).

In *Warren v. Testa* (C.P.1983), 9 OBR 556, 461 N.E.2d 1354, the Trumbull County Court of Common Pleas [2] held that a lion was a wild animal for purposes of a city nuisance ordinance. The court reasoned:

---

**2.** *Testa* is a trial court decision and is therefore not binding authority upon this court. However, we find the rationale of *Testa* persuasive and thus choose to rely upon that case in deciding the matter currently pending before this court. We also note that *Testa* was affirmed

"Dangerous animals, by definition, mean those known to be such in fact or ones which must necessarily be known by the one who keeps them to be likely to inflict serious damage. * * * A distinction has been made between animals which, by reason of their species, are by nature ferocious, mischievous, or intractable, and those of a species normally harmless. In the first category are lions." *Id.* at 556, 461 N.E.2d at 1356.

As in *Guillermin, Testa,* and the other decisions which we have cited, the Canadian cougars owned by appellees in this case are by their very nature dangerous wild animals which pose a significant threat to public safety. The mere fact that the cougars have become accustomed to interaction with man from living in captivity simply does not alter their wild and untamed nature so as to render them domesticated animals. See *Newman,* 143 Ohio St. at 379, 55 N.E.2d at 579. Therefore, we hold that as a matter of law a Canadian cougar is an "exotic animal" for purposes of Sections 1 and 8(A) of the Rabies Control Regulation. WCCHD's first assignment of error is sustained.

The judgment of the trial court finding that the Canadian cougars owned by appellees are not prohibited by Section 8(A) of the Rabies Control Regulation is hereby reversed. This cause is remanded to the Warren County Court of Common Pleas with instructions to determine what remedy or remedies are appropriate in this case.

In its second assignment of error, WCCHD argues that the health commissioner may prohibit appellees from owning the cougars under Section 9(A) of the Rabies Control Regulation and that the trial court erred in finding Section 9(A) unconstitutional. However, we need not reach this issue in light of our conclusion that appellees are prohibited from owning or harboring Canadian cougars under Section 8(A) of the Rabies Control Regulation. WCCHD's second assignment of error is thus moot and is hereby overruled.

■ In its third assignment of error, WCCHD argues that the trial court erred in finding that there was "some evidence" that Section 8(A) of the Rabies Control Regulation is being applied in an arbitrary or discriminatory fashion because it has not been enforced against the owners of buffaloes, chimpanzees, or ostriches. We disagree. The record contains no evidence that indicates whether the health commissioner has attempted to enforce Section 8(A) of the Rabies Control Regulation against the owners of buffaloes, chimpanzees, or ostriches, or whether there are even any buffaloes, chimpanzees, or ostriches within Warren County. Accordingly, the trial court erred in finding that there was "some evidence" that

on appeal by the Eleventh District Court of Appeals. See *Warren v. Testa* (Oct. 12, 1984), Trumbull App. No. 3302, unreported, 1984 WL 7304.

Section 8(A) of the Rabies Control Regulation was enforced in an arbitrary or uneven manner. WCCHD's third assignment of error is sustained.

*Judgment reversed*
*and cause remanded.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.