Carlyn **NICHOLSON, Individually and as the Representative of the Estate of Thomas Nicholson et al., Appellant,**

v.

**Herman and Mary SMITH, Individually and d/b/a Choke Canyon RV Park, Appellees.**

No. 04–98–00450–CV.

Court of Appeals of Texas, San Antonio.

Jan. 27, 1999.

J. Ronald Tucker, Ronald C. Muller, Houston, for Appellant.

Frank E. Weathered, Dunn & Weathered, P.C., Corpus Christi, for Appellee.

Before PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and CATHERINE STONE, Justice.

PHIL HARDBERGER, Chief Justice.

Carlyn Nicholson appeals from the trial court's grant of summary judgment in favor of Herman and Mary Smith in this premises liability action. In two points of error, Nicholson complains that the trial court erred in not striking certain summary judgment evidence and also erred by granting the Smiths' motion for summary judgment. We affirm the trial court's grant of summary judgment.

### I.

In early to mid-December of 1994, Thomas and Carlyn Nicholson rented a space at Choke Canyon RV Park, a recreational park owned by the Smiths, with the intent to spend the winter months in rural Texas. Nicholson had previously stayed at Choke Canyon RV Park throughout the winter months of 1990–91. At least one week after they had set up camp, on December 29, 1994, Thomas Nicholson was stung more than 1,000 times by fire ants while correcting the stabilizer on the underside of his house trailer. He was taken to a local hospital for treatment, and then was transferred to a hospital closer to his Illinois home. Following intermittent periods of hospitalization, Nicholson died on March 26, 1995. Nicholson suffered from leukemia, but there was some evidence that the fire ants were at least a contributing cause of his death.

His widow brought suit against the park and its owners, Herman and Mary Smith, alleging negligence, gross negligence, and violation of the implied warranties of merchantability and of fitness for a particular purpose contained in Article 2 of the Uniform Commercial Code. See TEX. BUS. & COMM. CODE ANN. §§ 2.314 and 2.315 (Vernon 1994).

Only the premises liability theory is at issue in this appeal.

After discovery, the Smiths moved for summary judgment on grounds they did not owe a duty to Nicholson with respect to the fire ants; that the presence of fire ants did not create an unreasonably dangerous condition; and that the deceased was warned about the fire ants. They also moved for summary judgment on grounds that there was no evidence of either an unreasonably dangerous condition or a failure to warn under the new "no-evidence" summary judgment rule. See TEX.R. CIV. P. 166a(i). Summary judgment was at first denied; it was later granted on motion for rehearing, without specifying a reason.[1]

### II.

#### A. RULE 166A(I)—NO EVIDENCE MOTION

■ In two issues Nicholson argues the trial court erred in not striking certain summary judgment evidence, and argues the trial court erred in granting the summary judgment. Effective September 1, 1997, Rule 166a(i) allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); W. Wendell Hall, *Standards of Review in Texas*, 29 ST. MARY'S L.J. 351, 418 (1998). A party may move for a "no-evidence" summary judgment only after an adequate opportunity for discovery. TEX.R. CIV. P. 166a(i). Rule 166a(i) requires the moving party to state the element(s) as to which there is no evidence, but it does not require the moving party to present summary judgment evidence.

■ "A no-evidence summary judgment is essentially a pretrial directed verdict," so we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Graves v. Komet*, 982 S.W.2d 551,

---

1. The Smiths assert summary judgment was granted after they brought the case of *Riley v.*

*Champion Int'l Corp.*, 973 F.Supp. 634 (E.D.Tex. 1997), to the attention of the court.

553(Tex.App.—San Antonio 1998); *Taylor–Made Hose, Inc. v. Wilkerson*, No. 04–97–01025–CV, 1999 WL 90021 at *2 (Tex.App.—San Antonio Feb. 24, 1999, n. pet. h.) (quoting Judge David Hittner and Lynne Liberto, *No–Evidence Summary Judgments Under the New Rule*, in STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997)); *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied).

We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Graves*, 982 S.W.2d at 553. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX .R. CIV. P. 166a(i); *see also Merrell Dow*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *Graves*, 982 S.W.2d at 553. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow*, 953 S.W.2d at 711.

When viewed in the light most favorable to her, Nicholson has brought forth more than a scintilla of probative evidence to raise a genuine issue of material fact, so the summary judgment cannot stand under a no-evidence Rule 166a(i) motion.

### B. RULE 166A(B)—DEFENDING PARTY'S MOTION

Rule 166a(b) permits a defending party to seek dismissal of a claim at any time. TEX.R. CIV. P. 166a(b). When reviewing the grant of a summary judgment, we follow these well-established rules: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)). Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's claims, or establishes all elements of an affirmative defense to each claim. *Id.*

When the trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action is entitled to summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). A defendant may also show entitlement to summary judgment by conclusively proving all elements of an affirmative defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

### C. SUMMARY JUDGMENT EVIDENCE

In her first point of error, Nicholson argues the trial court erred in not striking the Smiths' summary judgment evidence because it was the testimony of interested witnesses and did not meet the requirements of Rule 166a(c). *See* TEX.R. CIV. P.166a(c). The evidence complained of includes: 1) Herman Smith's affidavit; 2) excerpts from Herman Smith's deposition testimony; and 3) deposition testimony from Dan Head, who was a former manager of the RV park. The Smiths respond by contending that none of these issues were presented to the trial court and therefore none are preserved for our review.

Summary judgment may be based on the testimony of an interested witness if that evidence is clear, positive and direct, other-

wise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R. CIV. P.166a(c). Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. *Id.; see also City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

### 1. Testimony of Dan Head

Nicholson first contends that the trial court erred in not striking Dan Head's deposition testimony because Head was an interested witness and his testimony did not meet the standards of Rule 166a(c). However, in her motion opposing the Smiths' motion for summary judgment, Nicholson does not argue that Head is an interested witness. She questions Head's credibility, because Head was a "decade-long friend of the Smiths" and was a former on-site manager of the park. She also asserted that any testimony by Head would merely raise a fact issue.

Head is not an interested witness because he did not have a stake in the litigation or a material interest in its outcome. *See, e.g., Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 877(Tex.App.—Dallas 1990, no writ) (interested witness is one with some stake in outcome); *Hayes v. E.T.S. Enter. Inc.,* 809 S.W.2d 652, 656 (Tex.App.—Amarillo 1991, writ denied) (interested witness when company has stake in other litigation involving subject matter of lawsuit in question); *Kazmir v. Suburban Homes Realty,* 824 S.W.2d 239, 244 (Tex.App.—Texarkana 1992, writ denied)(named defendant is interested witness). The trial court did not err by not striking Head's testimony. Nicholson's complaint about Head's testimony under this point of error is overruled.

### 2. Testimony of Herman Smith

Nicholson also contends the trial court should have stricken Herman Smith's testimony because it came from an interested witness. She argues, specifically, that Herman Smith's affidavit pertained to matters not capable of contradiction, i.e., the knowledge of an interested witness, and therefore his affidavit and testimony failed to meet the requirements of Rule 166a(c). Review of Smith's affidavit and relevant deposition testimony reveals that the assertions contained therein are clear, free of contradiction and capable of being readily controverted. The trial court did not err. Nicholson's first point of error is overruled.

### D. FERAE NATURAE

As to the premises liability claim, the Smiths moved for summary judgment on the grounds that they did not owe a duty to Nicholson with respect to the fire ants; that the presence of fire ants did not create an unreasonably dangerous condition; and that the deceased was warned about the fire ants. Specifically, the Smiths argue that the doctrine of *ferae naturae* abrogates any duty to business invitees with regard to fire ants or other indigenous wild animals found upon their land.

The threshold inquiry in a negligence case is duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The question of duty turns on the foreseeability of harmful consequences, which is the underlying basis for negligence. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

In determining the question of duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Phillips,* 801 S.W.2d at 525.

It is undisputed that Thomas Nicholson was an invitee on the Smiths' land. As a general rule, a landowner must use reason-

able care to make the premises safe for the use of business invitees; this duty includes warning invitees of known hidden dangers that present an unreasonable risk of harm. *Lefmark Management Co. v. Old,* 946 S.W.2d 52, 53 (Tex.1997).

■ The Smiths argue the doctrine of *animals ferae naturae* makes the acts of wild animals an exception to the duty of care owed to an invitee. Meaning "animals of a wild nature or disposition," *ferae naturae* is a common law doctrine tracing its origins back to the Roman empire whereby wild animals [2] are presumed to be owned by no one specifically but by the people generally.[3] *State v. Bartee,* 894 S.W.2d 34, 41 (Tex.App.—San Antonio 1994, no pet.). Specifically, *ferae naturae* provides that wild animals belong to the state and

> no individual property rights exist as long as the animal remains wild, unconfined, and undomesticated. Unqualified property rights in wild animals can arise when they are legally removed from their natural liberty and made the subject of man's domin-

ion. This qualified right is lost, however, if the animal regains its liberty.

*Id.* (citations omitted).

■ Even one's status as the owner of land upon which the animals *ferae naturae* are found is insufficient to confer individual property rights to the animals thereon.[4] *Lone Star Gas Co. v. Murchison,* 353 S.W.2d 870, 876 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.).

■ The rule of law has developed that a landowner cannot be held liable for the acts of animals *ferae naturae,* that is, indigenous wild animals, occurring on his or her property unless the landowner has actually reduced the wild animals to possession or control, or introduced a non-indigenous animal into the area. *Gowen v. Willenborg,* 366 S.W.2d 695, 697 (Tex.Civ.App.—Houston [1st Dist.] 1963, writ ref'd n.r.e.).

Nicholson argues that, to the extent *ferae naturae* insulates a landowner from owing a duty with regard to indigenous, wild animals, it is only applicable with regard to a strict

**2.** The Restatement (Second) of Torts section 506 defines "wild animals" as "an animal that is not by custom devoted to the service of mankind at the time and in the place in which it is kept." RESTATEMENT (SECOND) OF TORTS § 506 (1977). In comment a, the Restatement explains that "[t]he word animal is used ... in a broad sense to include not only animals strictly so-called, but also birds, fish, reptiles and insects. Thus rattlesnakes, alligators, ostriches or tsetse flies are wild animals in the sense here used." *Id.* § 506 cmt. a. We find that fire ants fit within this categorization.

**3.** For an excellent historical recount of the evolution of the *ferae naturae* doctrine, see *State v. Bartee,* 894 S.W.2d 34, 41 (Tex.App.—San Antonio 1994, no pet.) and *McDowell v. State,* 785 P.2d 1, 11 (Alaska 1989).

**4.** The court in *Lone Star Gas Co.* aptly describes this maxim:

> "From the beginning, wild animals have been regarded as quasi-property of the entire human race. It is the *recognition of land titles rather than of any individual property in the game* that prevents its pursuit, and, barring all questions of trespass, exclusive property in birds and wild animals becomes vested in the person capturing or reducing them to possession. But unless killed, this is a qualified property, for when restored to their natural wild and free state, the dominion and individual proprietor-

> ship of any person over them is at an end and they resume their status as common property. So too are fish collective property so long as they remain unconfined in their element in a public stream, and *not even the owner of the soil over which the stream flows owns the fish therein,* although he may have the exclusive right of fishing in the stream where it runs over his land.

*Lone Star Gas Co.,* 353 S.W.2d at 876 (citing *Hammonds v. Central Ky. Nat'l Gas Co.,* 255 Ky. 685, 75 S.W.2d 204, 206 (1934))(emphasis added). This maxim is echoed in comment a to section 508 of the Restatement (Second) of Torts, which provides:

> "The possession of the land does not carry with it possession of the indigenous wild animals that are upon it. The possessor of the land does not acquire possession of these animals until he has brought them within his control, as for example by impounding them, and he loses possession of them if he releases them from his control or if they escape. He does not acquire possession of the animals by providing shelter or food for them or protecting them from the depredations of other animals. *Even if he stocks his land with indigenous game, he loses possession of them when he turns them out upon his land, and is not subject to liability under the rule stated in § 507 for any harm that they do thereafter.*"

RESTATEMENT (SECOND) OF TORTS § 508 cmt. a (1977) (emphasis added).

liability claim. Nicholson contends that because her claim sounds in negligence, *ferae naturae* cannot be invoked to prevent liability. The law with regard to *ferae naturae* under a strict liability cause of action is well-settled: a landowner can only be held liable for the acts of wild animals against invitees upon its lands if the landowner has reduced the animal to his or her possession and control, or introduced a non-indigenous animal into the area. *Overstreet v. Gibson Product Co.*, 558 S.W.2d 58 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Gowen*, 366 S.W.2d at 697; *Warren Cty. Combined Health Dist. v. Rittenhouse*, 117 Ohio App.3d 97, 689 N.E.2d 1036, 1038 (1997); RESTATEMENT (SECOND) OF TORTS § 508 (1977). With regard to a negligence claim, however, the law is slightly more nebulous. Although most courts which have considered the issue recognize the possibility that a claim for negligence may not be precluded by *ferae naturae* per se, the majority of cases, including all of the Texas cases, have refused to find that the landowner owed the invitee a duty with regard to the acts of wild animals on its premises. Even though courts generally agree that they *may* impose a duty on a premises owner, few have actually done so.

*Gowen v. Willenborg*, which holds that *ferae naturae* may bar a premises liability claim sounding in negligence, is the seminal case in this area. 366 S.W.2d at 697. In *Gowen*, an attractive nuisance case, a boy climbed a billboard on defendant's property and encountered a wasps' nest. *Id.* at 696. The wasps' stings caused him to lose his footing and fall, causing severe injuries. *Id.* The trial court rendered summary judgment for the defendant; the court of appeals affirmed. *Id.*

The *Gowen* court began its discussion by setting forth the elements of a negligence action for premises liability, then went on to hold that *ferae naturae* barred the plaintiff's negligence action. *Id.* The court held that, in general, the law does not require an owner or possessor of land to anticipate the presence of, or guard invitees against the harm from, wild animals unless he or she has reduced them to possession, harbors them, or has introduced onto the premises wild animals which are not indigenous to the locality. *Id.* at 697; *see also Glave v. Michigan Terminix Co.*, 159 Mich.App. 537, 407 N.W.2d 36, 37 (1987) (holding that *ferae naturae* precluded plaintiff's claim that city should be liable for driving pigeons into her neighborhood, where city took no steps to tame, confine, or to otherwise control pigeons); RESTATEMENT (SECOND) OF TORTS § 508 (1977); 59 TEX. JUR.3D *Premises Liability* § 35.

In so holding, the *Gowen* court recognized that "[a]rtificial conditions, such as farm ponds, frequently become the abode of poisonous snakes, and stinging insects are common in hunting lodges and summer homes, but no cases have been found where a duty of ordinary care has been imposed on the owner or possessor of such premises."[5] *Id.* at 697.

The holding in *Gowen* was recently adopted by a federal district court applying Texas law in a premises liability claim sounding in negligence. *Riley v. Champion Int'l Corp.*, 973 F.Supp. 634 (E.D.Tex.1997). In *Riley*, an independent contractor logger contracted Lyme disease from being bitten by ticks while working on defendant's land; he sued, contending Champion breached a duty of care to provide him safety information on Lyme disease, as well as on premises liability grounds. *Id.* at 636. The district court adopted the portion of the magistrate's re-

---

**5.** The appellate court, utilizing the concept of *ferae naturae*, removed the wasps from the equation and asked if the billboard was an unreasonably dangerous condition without the wasps. It found that it was not:

> It has not been determined that public policy requires the imposition of liability in such cases. The presence of dangerous insects or animals in or near an artificial condition or structure, which does not in itself involve an unreasonable risk of death or serious bodily injury to a trespassing child, does not trans-

form such a condition or structure into one involving such a risk. An unreasonable risk of serious bodily injury may be present, but it is not presented by the structure or artificial condition.

*Gowen*, 366 S.W.2d at 697–98 (emphasis added). We find this significant in support of the result we reach. If liability does not lie with regard to wild animals found on or in an artificial structure, surely the argument is more compelling against liability where the animals are found in their natural habitat.

port which affirmed summary judgment on the negligence claim based on premises liability. *Id.* at 636, 642–43 (relying on *Gowen,* 366 S.W.2d at 697 and the RESTATEMENT (SECOND) OF TORTS § 508). The court held that, although the defendant owed plaintiff a duty to warn of hidden dangers, this duty did not include a warning of the presence of indigenous wild animals, such as the ticks that bit the plaintiff. *Id.* at 641.

Nicholson argues that *Overstreet v. Gibson Product Co.* controls the disposition of this case because it affirmatively creates a duty with regard to wild animals on a premises. In *Overstreet,* the plaintiff sued defendant store after he was bitten by a rattlesnake while in the store, proceeding on both strict liability and negligence grounds. 558 S.W.2d .at 59–60. The court rejected the strict liability claim, recognizing that such a claim would only lie if the premises owner had kept or harbored a wild animal on its premises. *Id.* at 61. The court held that the mere presence of the snake on the defendant's property was no evidence that the defendant "kept or harbored" the snake. *Id.*

The *Overstreet* court found that, although a premises owner who holds his or her land open to business invitees has a duty to exercise reasonable care to protect those invitees from animals coming onto the premises, he or she is under no duty to exercise such care until the landowner knows or has reason to know that dangerous acts by wild animals are occurring or are about to occur. *Id.* The court upheld the trial court's entry of judgment N.O.V., finding that the landowner had no actual knowledge of the snake in the store, and there was no reason that the defendant should or could have known of the presence of the snake in the store. *Id.* at 62.

We disagree with Nicholson's characterization of *Overstreet. Overstreet* stands for the proposition that certain facts *may* give rise to a duty with regard to wild animals. As we have said, though, the existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker,* 924 S.W.2d at 377. In the instant case, we do not find that the facts surrounding the occurrence in question support the imposition of a duty.

Nicholson was attacked by indigenous wild animals in their natural habitat, in the normal course of their existence. The Smiths did nothing to cause the fire ants to act outside of their expected and normal behavior. Nicholson was not injured while in an artificial structure, nor was he injured where fire ants would not normally be found, nor was the presence of the fire ants due to any affirmative or negligent act of the Smiths bringing them upon the property or drawing them to the area where Nicholson was parked. In fact, Smith testified that he regularly attempted to kill or drive away the fire ants.

Presumably Nicholson chose to stay at the Choke Canyon RV park, as opposed to a hotel, in rural South Texas because he wanted to enjoy the natural environment. His injury, although tragic, was incident to his enjoyment of the natural land. Nature, in Texas, is a rich mixture. A great deal of it is compatible with human happiness and safety. But some is not. Nature is not tamed in Texas and those who seek the outdoors are exposed to its dangers. A good deal of the vegetation in Texas stings, sticks or stinks. Any number of insects and animals can hurt, or even kill you.

We do not say a landowner can never be negligent with regard to the indigenous wild animals found on its property. A premises owner could be negligent with regard to wild animals found in artificial structures or places where they are not normally found; that is, stores, hotels, apartment houses, or billboards, if the landowner knows or should know of the unreasonable risk of harm posed by an animal on its premises, and cannot expect patrons to realize the danger or guard against it. *See, e.g., DeLuce v. Fort Wayne Hotel,* 311 F.2d 853, 857 (6th Cir.1962) (remanding for new trial where presence of rats in the alley adjoining hotel and on sidewalk in front of created fact question on hotel operator's duty to protect guests from foreseeable event that such rats might enter hotel through its doors); *Carlson v. State,* 598 P.2d 969, 974–75 (Alaska 1979) (reversing summary judgment and remanding for trial on fact issues of State's knowledge of bears' presence, danger posed by them, and fore-

seeability of attack in location where trash was left uncollected); *CeBuzz, Inc. v. Sniderman,* 171 Colo. 246, 466 P.2d 457, 459 (Colo. 1970) (finding that defendant's knowledge of presence of banana tarantulas in last shipment of bananas delivered to store gave rise to liability for bite to shopper); *Williams v. Milner Hotels Co.,* 130 Conn. 507, 36 A.2d 20, 22 (1944) (holding that presence of rat holes in guest room put landowner on notice of presence of rats). *But see Riley,* 973 F.Supp. at 642–43 (affirming summary judgment for premises owner on negligence issue where plaintiff developed Lyme disease after being bitten by tick); *Overstreet,* 558 S.W.2d at 63 (holding store owner had no duty to guard against snakes where owner did not, or should not have known of presence of snake); *Fleming v. Arrington,* 610 So.2d 1160, 1162 (Ala.1992) (upholding summary judgment for landowner by holding that business invitee's knowledge of fire ants on property, a "known and obvious danger," relieved landowner of duty to warn, and, thus, liability); *Brunelle v. Signore,* 215 Cal.App.3d 122, 263 Cal.Rptr. 415, 420 (1989) (affirming summary judgment in favor of landowner by refusing to impose duty on owner of guest home to exterminate or clean if such duty would "impose intolerable burden on homeowners" and would, in effect, impose absolute liability on homeowner for injuries caused by insect or spider bites on premises); *Glave,* 407 N.W.2d at 37 (upholding defendant's summary judgment on plaintiff's negligence claim by holding that *ferae naturae* prevented city from being liable for driving pigeons into her neighborhood, where city took no steps to tame, confine, or to otherwise control pigeons); *Rippy v. Fogel,* 108 Pa. Cmwlth. 296, 529 A.2d 608, 609–10 (1987) (affirming dismissal of plaintiff's claim that State owed duty to correct situation of deer on highway, particularly because State had specific knowledge of prior accidents, by holding that there was no conceivable way to correct problem posed by wild animals);*Wamser v. City of St. Petersburg,* 339 So.2d 244, 246 (Fla.Ct.App.1976) (affirming defendant's summary judgment utilizing *ferae naturae* to find that city had no duty to warn or guard against shark attacks, nor had duty to gather information about likelihood of such attacks, in absence of specific knowledge of danger or necessity of obtaining such information); *Williams v. Gibbs,* 123 Ga.App. 677, 182 S.E.2d 164, 165 (1971) (finding defendant had no duty to patron for injuries resulting from snake bite because there was no evidence that owner had ever seen a snake on premises); *Gowen,* 366 S.W.2d at 697 (affirming summary judgment in favor of landowner on negligence claim based on *ferae naturae* ).

■ In the instant case, the summary judgment evidence reveals that Smith routinely warned invitees of the presence of fire ants, that he discouraged customers from parking their trailers where fire ant mounds were found, and that Dan Head specifically warned Nicholson about the presence of fire ants, to which Nicholson responded, "I know. I was here before." Carlyn Nicholson admitted she had no idea whether her husband had been warned or not about the existence of fire ants. She only said no one warned her. Thus, the testimony of Smith and Head was uncontroverted. The summary judgment evidence also shows that Smith applied fire ant poison to the property every three or four weeks. Smith also testified that he applied poison to ant hills when and where he found them as he was mowing the grass or walking on the property. There is no evidence that the Choke Canyon RV Park was experiencing a greater incidence of fire ants than the surrounding areas at the time Nicholson rented the space. Nicholson did not controvert this testimony or evidence. Based on the summary judgment evidence, we find that Nicholson had both actual and constructive knowledge of the presence of and danger posed by fire ants. Nicholson and Smith were aware of this natural, but pernicious, insect. Smith took reasonable steps to control the pests, but, unfortunately, fire ants are simply an undesirable part of the South Texas landscape.

■ Under ordinary circumstances, Texas landowners do not have a duty to warn their guests about the presence and behavior patterns of every species of indigenous wild animals and plants which pose a potential threat to a person's safety, as well as the extent of that threat. If a landowner was

required to affirmatively disclose all risks caused by plants, animals, and insects on his or her property, "the burden on the landowner would be enormous and would border on establishing an absolute liability." *Brunelle*, 263 Cal.Rptr. at 419–20. We do not say that there never can be such a case. But this case fits within the rule, not the exception.

 Fire ants, by legal definition, are indigenous wild animals, and, without more, they do not pose an unreasonable risk of harm in their natural habitat. *See Gowen*, 366 S.W.2d at 697 (holding that wasps' nest is natural condition and is not in itself dangerous). Nicholson was not injured while in an artificial structure, nor was he injured where fire ants would not normally be found. The presence of the fire ants was not caused by any affirmative or negligent act of the Smiths. Indeed, Smith tried to control them, and there was uncontroverted summary judgment evidence that Nicholson was aware of their presence.

### III. CONCLUSION

The trial court did not err in admitting the summary judgment evidence of Head and Smith's testimony, nor did the trial court err in granting summary judgment. The doctrine of *ferae naturae* defeats Nicholson's premises liability claim as a matter of law. The judgment of the trial court is affirmed.