LEVINE, J.
The issue presented in this case is whether the trial court erred in determining that the landlord, a mobile home park owner, owed no duty to its tenants due to the concept of “ferae naturae.” We find that the trial court correctly determined that the landlord had no duty to guard against fire ants where the landlord had not possessed, harbored, or introduced the fire ants to the premises, and the record did not indicate that the landlord had specific knowledge of the hazards presented by fire ants to the premises. We affirm the trial court’s entry of a final order of summary judgment for the appellees.
Appellant resided at Pinelake Gardens and Estates mobile home park. Appellant’s husband, Dennis Hanrahan, took his dog for a walk one evening. He rushed back home telling his wife, Barbara, that *917 ants were biting his face and neck. Mr. Hanrahan told his wife that he “brushed up against the bushes” and “they must have come from the bushes because they did not climb up his legs.” He attempted to wash off the fire ants, but collapsed on the shower floor. Mr. Hanrahan died two days later.
According to appellant, the only bushes that Mr. Hanrahan could have touched while walking his dog would have been in a particular common area of Pinelake, referred to as the “Preserve.” Pinelake’s community manager testified that she was not aware of any resident ever being attacked by fire ants anywhere on Pinelake’s premises. Nor was the community manager aware of any fire ant infestation at the area of Pinelake where the incident allegedly took place. An employee of the exterminator for Pinelake testified to spraying insecticide every other month in order to kill ants. The exterminator’s contract did not specifically include killing fire ants, and the employee stated that he had no knowledge of any ant activity or reason to recommend treating the area where the alleged incident took place. The exterminator confirmed that red fire ants are “wild animals,” whose natural habitat is outdoors in South Florida. The exterminator testified that permanent eradication of fire ants from a property would be “an impossibility.”
Pinelake maintenance and office staff testified that in addition to the exterminator’s insecticide treatments, the maintenance staff would treat any visible ant mounds with granules. Occasionally, while trimming bushes, several members of the maintenance staff had been bitten by ants in the past. The staff would call the exterminators if residents reported “something out of the ordinary with too many red ants or anything like that.”
The trial court granted appellees’ motion for summary judgment. The trial court found that appellees were not on notice of a fire ant infestation at the area of the alleged incident, and therefore appellees did not have a duty to appellant to guard against the red ants. As a result of the granting of the summary judgment, this appeal ensues.
This court reviews a trial court’s order granting summary judgment de novo. Coleman v. Grandma’s Place, Inc., 63 So.3d 929, 932 (Fla. 4th DCA 2011). “[A] party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought.” Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). Further, “where a defendant establishes as a matter of law, that no duty is owed to the plaintiff, the trial court may properly grant summary judgment in favor of the defendant.” Strickland v. Timco Aviation Servs., Inc., 66 So.3d 1002, 1006 (Fla. 1st DCA 2011). Accord Smith v. Grove Apartments, LLC, 976 So.2d 582, 586 (Fla. 3d DCA 2007) (explaining that summary judgment may be appropriate if the mov-ant can establish that, as a matter of law, the movant owed no duty or did not breach a duty which it owed to the other party). “As to duty, the proper inquiry for the reviewing appellate court is whether the defendant’s conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred.” McCain v. Fla. Power Corp., 593 So.2d 500, 504 (Fla.1992). “[F]oreseeability as it relates to duty is a question of law.” Aircraft Logistics, Inc. v. H.E. Sutton Forwarding Co., 1 So.3d 309, 311 (Fla. 3d DCA 2009).
“Meaning ‘animals of a wild nature or disposition,’ ferae naturae is a common law doctrine tracing its origins back to the Roman empire whereby wild animals are *918 presumed to be owned by no one specifically but by the people generally.” Nicholson v. Smith, 986 S.W.2d 54, 60 (Tex. App.1999) (footnote omitted). “[T]he doctrine is actually based upon a reality not appreciably altered by the passage of time; namely, the unpredictability and uncont-rollability of wild animals.” Belhumeur v. Zilm, 157 N.H. 233, 949 A.2d 162, 165 (2008).
Generally speaking, in Florida,
the law does not require the owner or possessor of land to anticipate the presence of or guard an invitee against harm from animals Ferae naturae unless such owner or possessor has reduced the animals to possession, harbors such animals, or has introduced onto his premises wild animals not indigenous to the locality.
Wamser v. City of St. Petersburg, 339 So.2d 244, 246 (Fla. 2d DCA 1976). In Wamser, the complaint alleged that Wam-ser incurred severe injuries as a result of a shark attack in the waters adjacent to a city beach. The lifeguard on duty had just received a report of a shark sighting when Wamser was attacked by a shark. In opposition to the city’s motion for summary judgment, Wamser filed an affidavit from a Marine Patrol captain, stating that he had observed sharks in close proximity to that beach. The court upheld the granting of summary judgment, finding that “there was nothing to indicate that the city had knowledge of a shark hazard.” Id. The court concluded that “[i]n the absence of reasonable foreseeability of the danger, there was no duty on the part of the city to guard an invitee against an attack by an animal Ferae naturae, or to warn of such an occurrence.” Id. In the present case, like Wamser, there was no evidence in the record to indicate that appellees had knowledge of an animal “fer-ae naturae” attack in the alleged area.
We are specifically persuaded by Nicholson, 986 S.W.2d 54. In Nicholson, the plaintiffs rented a space at an RV park, where one of the plaintiffs was stung more than 1,000 times by fire ants. He subsequently died, and “there was some evidence that the fire ants were at least a contributing cause of his death.” Id. at 57. The appellate court affirmed the granting of summary judgment on behalf of the park owners, the Smiths, determining that the facts did not “support the imposition of a duty.” Id. at 62. The court stated:
Nicholson was attacked by indigenous wild animals in their natural habitat, in the normal course of their existence. The Smiths did nothing to cause the fire ants to act outside of their expected and normal behavior. Nicholson was not injured while in an artificial structure, nor was he injured where fire ants would not normally be found, nor was the presence of the fire ants due to any affirmative or negligent act of the Smiths bringing them upon the property or drawing them to the area where Nicholson was parked. In fact, Smith testified that he regularly attempted to kill or drive away the fire ants.
Id. In the present case, the presence of the fire ants was not caused by any act of appellees to bring them onto the property. Appellees did not harbor, introduce, or reduce the fire ants to possession. Further, appellees regularly attempted, by maintenance staff or exterminators, to treat ant mounds or any other manifestations of fire ants.[1]
We also adopt from Nicholson the following caveat:
We do not say a landowner can never be negligent with regard to the indige *919 nous wild animals found on its property. A premises owner could be negligent with regard to wild animals found in artificial structures or places where they are not normally found; that is, stores, hotels, apartment houses, or billboards, if the landowner knows or should know of the unreasonable risk of harm posed by an animal on its premises, and cannot expect patrons to realize the danger or guard against it.
Id.; see also Belhumeur, 949 A.2d at 166 (agreeing with Nicholson in declining to “say that there never can be [liability in] such a case”); St. Joseph’s Hosp. v. Cowart, 891 So.2d 1039, 1041 (Fla. 2d DCA 2004) (noting that, in an appropriate case, “a landowner could owe a duty with regard to wild animals found inside an artificial structure”). In the present case, there is no evidence that appellees knew or should have known “of the unreasonable risk of harm posed by” fire ants. Nicholson, 986 S.W.2d at 62.
In summary, based on the application of the rule of “ferae naturae,” we affirm the trial court’s granting of summary judgment.[2]

Affirmed.

POLEN and GROSS, JJ., concur.

. The record contained the exterminator’s testimony that eradicating fire ants would be impossible. South Florida, like Texas as described in Nicholson, has a natural environ *919 ment that is "not tamed.” Nicholson, 986 S.W.2d at 62. Just as in Texas, "those who seek the outdoors are exposed to its dangers” and “[a]ny number of insects and animals can hurt, or even kill you.” Id.

. Appellant argues that section 723.022(2), Florida Statutes (2009), precluded the granting of summary judgment for appellees on the issue of duty, because it created an independent statutory duty. Section 723.022(2) requires a mobile home park owner to "maintain the common areas in a good state of appearance, safety, and cleanliness.” We find, however, that this section is not an independent source of duty in this case. Like the residential tenancy statute, as it pertains to common areas, section 83.51(2)(a)3., Florida Statutes, the mobile home park owner statute "merely restates the landlord’s common law duty as it would exist in the absence of a statute.” Haynes v. Lloyd, 533 So.2d 944, 945 (Fla. 5th DCA 1988).