# IN THE SUPREME COURT OF TEXAS

No. 18-1065

HOMER HILLIS, PETITIONER,

v.

HENRY MCCALL, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued January 9, 2020**

JUSTICE LEHRMANN delivered the opinion of the Court.

The *ferae naturae* doctrine limits a landowner's liability for harm caused by indigenous wild animals on his property. In this premises-liability case arising out of a brown-recluse spider bite, we are asked how the doctrine affects the scope of the landowner's duty to his bitten invitee. The landowner argues that he owed no duty to the invitee because he was unaware of the presence of brown recluse spiders on his property and he neither attracted the offending spider to his property nor reduced it to his possession. Further, the invitee had actual knowledge of the presence of spiders on the property. The court of appeals held that the property owner failed to conclusively establish the absence of a duty and thus reversed the trial court's summary judgment in his favor. We agree with the landowner and reverse the court of appeals' judgment.

## I. Background

Homer Hillis owns a bed and breakfast (the B&B) and a neighboring cabin in Fredericksburg, Texas. He used the B&B as a second home until 2012, when he began renting it out, mainly on weekends. Hillis hired a housekeeper to prepare and clean the B&B before guests arrived. That process included utilizing "bug bombs" in the event the housekeeper noticed any pest problems. Thus, as Hillis described it, pest control at the B&B was conducted on an "[a]s needed" basis.

In early 2014, Hillis leased the neighboring cabin on the property to Henry McCall.[1] The cabin had no washer or dryer and had only a small refrigerator, so Hillis permitted McCall to use the laundry facilities and larger refrigerator in the B&B. McCall also offered to "open up" the B&B for guests and others needing access, such as electricians and other maintenance workers. According to McCall, Hillis typically called him several days before guests arrived and asked him to perform various tasks.[2]

On December 12, 2014, McCall accessed the B&B at Hillis's request to check the dishwasher and investigate whether the sink was leaking. While checking under the sink for a leak, McCall was bitten by a brown recluse spider, which is a venomous spider found in several states, including Texas.

---

[1] Karen Oringderff, McCall's common-law wife, was also a tenant. She is not a party to this lawsuit.

[2] Hillis disputed this characterization, stating that he typically did not affirmatively request McCall's assistance with respect to preparing the B&B for guests. Rather, Hillis merely accepted McCall's offer to help, was "happy that he was willing to do it, and . . . appreciated it." For summary judgment purposes, we will accept McCall's version of events.

Before he was bitten, McCall had observed spiders in both the cabin and the B&B on several occasions and had notified Hillis about the general presence of spiders in the B&B.[3] According to Hillis, when McCall reported issues with insects or spiders, Hillis would pass along the information to the housekeeper who prepared the B&B for guests. Hillis also averred that customer reviews of the B&B had never complained of insects. Neither Hillis nor McCall had any personal knowledge about the presence of brown recluse spiders on Hillis's property specifically or in the surrounding area.[4] However, Hillis explained that he had read reports on the internet that brown recluse spiders "are habitats [sic] of Texas for a long time, and I assumed they were around my property." Hillis had heard of people being bitten by brown recluses "elsewhere," but not on his property.

McCall sued Hillis for negligence under a premises-liability theory, alleging that the presence of brown recluse spiders on Hillis's property constituted an unreasonably dangerous condition, that Hillis knew or should have known of the condition, that Hillis owed McCall a duty to adequately warn him of the condition or make the property safe, that Hillis breached that duty, and that McCall suffered damages as a result. Hillis filed a motion for summary judgment, arguing that, under the longstanding doctrine of *ferae naturae*, he owed no duty to McCall with respect to indigenous wild animals that Hillis had neither introduced to nor harbored on the property. The trial court granted the motion, and McCall appealed.

---

[3] McCall was responsible for pest control in the cabin while Hillis remained responsible for pest control in the B&B.

[4] According to the court of appeals, "Hillis admitted in his deposition that he knew there was a population of brown recluse spiders on the property." 562 S.W.2d 98, 106 (Tex. App.—San Antonio 2018). Neither party references deposition testimony to that effect, and our review of the record revealed no such testimony.

The court of appeals reversed. 562 S.W.3d 98, 106 (Tex. App.—San Antonio 2018). Viewing the evidence in the light most favorable to McCall, the court concluded that "McCall was bitten by a spider in an artificial structure and Hillis knew or should have known of an unreasonable risk of harm posed by the spiders inside the B&B." *Id.* Accordingly, the court held that Hillis had failed to establish as a matter of law the absence of a duty to warn or make safe under the doctrine of *ferae naturae*. *Id.*

## II. Discussion

### A. Standard of Review

A trial court's order granting summary judgment is reviewed de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). A party moving for traditional summary judgment has the burden to prove that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *see also* TEX. R. CIV. P. 166a(c). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citations omitted).

### B. Premises Liability and *Ferae Naturae*

"A claim against a property owner for injury caused by a condition of real property generally sounds in premises liability." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 642 (Tex. 2016). When the claim is based on the property owner's negligence, the threshold question is whether the owner owed a duty to the injured person. *See Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 794 (Tex. 2008). "The existence of a duty is a question of law for the court to decide

from the facts surrounding the occurrence" at issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).[5] Further, the duties owed by a landowner in a premises-liability case "depend upon the role of the person injured on his premises." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 535 (Tex. 1975). When the injured person qualifies as an invitee,[6] as McCall did,[7] then as a general rule the landowner owes a "duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015); *see also United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (landowner's duty to an invitee is to "use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner . . . knows about or in the exercise of ordinary care should know about" (citation omitted)). In line with that rule, the duty does not extend to warning the invitee of hazards that are open and obvious. *Austin*, 465 S.W.3d at 204.

Notwithstanding the general rule regarding the duty a premises owner owes to invitees, we have approached the scope of the duty differently in some circumstances. For example, we have held that a premises owner generally has no duty to protect invitees from the criminal acts of third parties on the owner's property, but we recognize an exception "when the owner knows or has reason to know of a risk of harm to invitees that is unreasonable and foreseeable." *Del Lago*

---

[5] We balance several factors in determining whether a duty exists, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the landowner's conduct, the burden of preventing the injury, and the consequences of placing that burden on the landowner. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

[6] An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas*, 518 S.W.2d at 536.

[7] McCall alleged in his petition that he qualified as an invitee when he was bitten, and Hillis conceded as much for purposes of his summary judgment motion. We therefore assume without deciding that McCall was an invitee.

5

*Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *see also Austin*, 465 S.W.3d at 206 (characterizing the duty recognized in *Del Lago* as an exception to the general rule that a landowner owes no duty to warn an invitee with respect to unreasonably dangerous conditions that are obvious or known to the invitee). Pertinent to this case, we have also recognized that, with certain exceptions, a premises owner generally owes no duty to protect invitees from wild animals on the owner's property. *Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 896–97 (Tex. 2016). Under this longstanding doctrine of *ferae naturae*, such a duty does not exist "unless the landowner actually reduced indigenous wild animals to [his] possession or control," "introduced nonindigenous animals into the area," or affirmatively "attract[ed] the animals to the property." *Id.* at 897 (citations omitted); *see also Nicholson v. Smith*, 986 S.W.2d 54, 63 (Tex. App.—San Antonio 1999, no pet.).

The reasoning underlying the doctrine is that wild animals "exist throughout nature" and are "generally not predictable or controllable." *Nami*, 498 S.W.3d at 897 (quoting 4 AM JUR. 2d, *Animals* § 62 (2007)).[8] In turn, the mere fact that an indigenous wild animal has crossed a landowner's property line does not make the landowner better able to protect an invitee than the invitee is to protect himself. *Id.*; *see also Nicholson*, 986 S.W.2d at 63 ("Under ordinary circumstances, Texas landowners do not have a duty to warn their guests about the presence and behavior patterns of every species of indigenous wild animals and plants which pose a potential threat to a person's safety . . . ."). The risk and foreseeability of injury do not outweigh the severe burden and potential consequences of imposing a general duty on a landowner with respect to

---

[8] We recognized in *Nami* that insects are treated as wild animals. 498 S.W.3d at 896 (citing RESTATEMENT (SECOND) OF TORTS § 506 cmt. a (AM. LAW INST. 1977)). We see no reason to treat arachnids differently.

"indigenous wild animals in their natural habitat, in the normal course of their existence."

*Nicholson*, 986 S.W.2d at 62; *see also Brantley v. Oak Grove Power Co.*, No. 10-12-00135-CV, 2012 WL 5974032, at *3 (Tex. App.—Waco Nov. 29, 2012, no pet.) (mem. op.) (holding that a landowner owed no duty to a construction worker who was bitten by a spider at a construction site, in part because the spider was "in its natural habitat in the normal course of its existence" and the employer had engaged in no affirmative or negligent acts to draw spiders to the area).

However, courts applying the *ferae naturae* doctrine have long recognized an additional exception to the general no-duty rule, holding that a landowner:

> could be negligent with regard to wild animals found in artificial structures or places where they are not normally found; that is, stores, hotels, apartment houses, or billboards, if the landowner knows or should know of the unreasonable risk of harm posed by an animal on its premises, and cannot expect patrons to realize the danger or guard against it.

*Nami*, 498 S.W.3d at 897 (citing various treatises); *see also Overstreet v. Gibson Prod. Co.*, 558 S.W.2d 58, 61 (Tex. App.—San Antonio 1977, writ ref'd n.r.e.) (noting that a landowner owes no duty to exercise reasonable care to protect invitees from the acts of wild animals on the property "until he knows or has reason to know that the dangerous acts by wild animals are occurring or about to occur"). Under that exception, a duty akin to the general duty owed to invitees under Texas law—that is, a duty to warn of or make safe from an unreasonably dangerous condition about which the owner knows or reasonably should know but the invitee does not—arises with respect to "wild animals found in artificial structures or places where they are not normally found." *Nami*, 498 S.W.3d at 897.

We generally agree with the policies underlying imposing such a duty on landowners with respect to wild animals that pose an unreasonable risk of harm inside artificial structures like

7

homes, stores, hotels, and offices. While landowners cannot be held to account for every animal that finds its way inside, particularly small animals like insects and spiders that may easily enter and escape detection, we also do not expect invitees as a general matter to exercise any particular vigilance with respect to wild animals when inside.[9] Thus, when a wild animal enters such a structure, and the owner knows or has reason to know about the animal's presence and the unreasonable risk of harm presented thereby but the invitee does not, it is reasonable to expect the owner to take steps to alleviate the danger or at least warn the invitee of it. *See Overstreet*, 558 S.W.2d at 61, 63 (holding that a grocery store owner was not liable to a patron who was bitten by a rattlesnake inside the store where nothing in the record suggested that the owner "knew, or had reason to know from past experience, that there was a likelihood that snakes presented a danger to patrons").[10]

Hillis argues that this exception amounts to a "new duty" that places an untenable burden on landowners. We disagree. First, it comports with the general premises-liability duty imposed on landowners with respect to invitees as well as the consistently recognized caveat to the *ferae naturae* doctrine. *Nami*, 498 S.W.3d at 897; *see also Nicholson*, 986 S.W.2d at 62; *Overstreet*, 558 S.W.2d at 61. Second, the fact that the duty hinges on the owner's knowledge or reason to

_____

[9] In light of these considerations, the fact that the injury occurs in or near any type of artificial structure does not necessarily give rise to the exception. For example, in *Brantley*, the plaintiff was bitten by a spider while "standing on a concrete slab [at a construction site] with a partial structure and no roof." 2012 WL 5974032, at *3. The court of appeals, noting testimony that "there were spiders everywhere in the field" at the site, held that the spider that bit the plaintiff was in its natural habitat and no duty was owed. *Id.* While we cannot anticipate how the doctrine would apply with respect to every type of artificial structure imaginable, we can say that we do not view barns and billboards in the same way as structures like houses, hotels, offices, and retail stores in evaluating the duty owed with respect to wild animals.

[10] We need not address whether an additional exception exists when a landowner has actual knowledge of an unreasonable risk of harm presented by a wild animal on his property (even while outside) and the patron neither knows nor reasonably should know of the risk.

8

know of an *unreasonable* risk of harm is significant. Unfortunately, many insects and spiders are commonly found indoors. The ever-present possibility that an insect or spider bite may occur indoors does not amount to an unreasonable risk of harm imposing a duty on property owners to guard against or warn of this fact of life. To that end, knowledge of the presence of a harmless indigenous insect or spider does not in and of itself amount to a reason to know of the presence of the kinds of insects or spiders that present a danger to invitees. On the other hand, a property owner who knows or should know of an unreasonable risk that dangerous indoor pests will bite invitees in his particular building has a duty to alleviate the danger or warn of it if the invitees neither know nor should know of the heightened risk. This strikes an appropriate balance between protecting invitees and ensuring that the burden placed on landowners is not unduly onerous.

Having outlined the parameters of the pertinent duty, we turn to its application to the facts of this case.

## C. Analysis

Viewing the evidence in the light most favorable to McCall, the pertinent facts are as follows:

- Hillis's property is in Fredericksburg, in the Texas Hill Country.

- Hillis rented a cabin on the property to McCall and used a residence on the property as a B&B, mainly for weekend rentals.

- Hillis conducted pest control in the B&B on an as-needed basis by instructing the housekeeper to set off bug bombs if she saw pests while preparing the B&B for guests.

- McCall, an invitee, was bitten by a brown recluse spider inside the B&B while checking under the kitchen sink for a leak.

- Brown recluse spiders are indigenous to Texas.

9

- Hillis had read about brown recluse spiders on the internet and knew that they were indigenous to Texas and thus that they could be on his property.

- McCall did not know brown recluse spiders were indigenous to Texas.

- McCall had seen spiders on several occasions in both the cabin and the B&B. When he saw spiders in the B&B, he would notify Hillis, who passed along the information to the housekeeper who prepared the B&B for guests.

- Customer reviews of the B&B had never mentioned insects.

- Hillis had no actual knowledge of the presence of brown recluse spiders on his property before McCall was bitten.

- McCall had no actual knowledge of the presence of brown recluse spiders on Hillis's property before McCall was bitten.

On these facts, we hold that Hillis owed McCall no duty as a matter of law, notwithstanding the fact that the injury occurred inside the B&B. McCall's position is essentially that because Hillis knew spiders had been seen in the B&B, and because he knew brown recluses are found in Texas, he knew or should have known that a dangerous brown recluse spider was in the B&B and thus had a duty to warn McCall.[11] We disagree.

First, as noted, knowledge of the general intermittent presence of spiders does not necessarily amount to knowledge of an unreasonable risk of harm, and Hillis had no particular reason to know that brown recluses, or other venomous spiders, were inside the B&B. Although Hillis knew that brown recluses are indigenous to Texas, the record does not show that he had identified or should have identified that the spiders McCall previously reported seeing inside the house presented a danger. Indeed, McCall testified in his deposition that the spiders he had seen in the B&B and reported to Hillis before McCall was bitten were the "[s]ame type of spiders" he

_____

[11] McCall does not contend that Hillis engaged in any affirmative or negligent acts to draw venomous spiders to the property.

had seen in his previous home in Fredericksburg, and nothing in the record indicates that he was referring to brown recluses or to any other type of venomous spider. The record thus conclusively negates a determination that Hillis knew or had reason to know of an unreasonable risk of harm presented by brown recluse spiders inside the B&B.

Further, McCall and Hillis had identical actual knowledge of the presence of spiders on the property: both knew that they had been seen in the B&B periodically, and neither knew of the presence of brown recluses or of other types of venomous spiders.[12] According to McCall, Hillis should have warned him that the spiders McCall himself had seen could have been venomous. But it is simply common knowledge that some spiders are venomous and others harmless. We will not impose a duty on a landowner to warn an invitee about something he already knows. *See Nami*, 498 S.W.3d at 897 (recognizing that imposition of a duty with respect to wild animals inside an artificial structure depends in part on a determination that the invitee cannot reasonably be expected "to realize the danger or guard against it").

As noted, the existence of a duty is a question of law that depends on the underlying facts. *Walker*, 924 S.W.2d at 377. Even with respect to wild animals found inside, an owner's duty to invitees does not extend beyond warning about or making safe from unreasonably dangerous

---

[12] The court of appeals did not consider the effect of McCall's awareness of the presence of spiders inside the B&B on whether Hillis owed him a duty, holding that "Hillis did not assert McCall's knowledge as a basis for summary judgment [and instead] relied exclusively on the doctrine of *ferae naturae* to negate the element of duty." 562 S.W.3d at 100 n.1. We disagree with that narrow characterization of Hillis's summary judgment motion. In challenging the existence of a duty in that motion, Hillis focused principally on the absence of evidence that he had attracted brown recluses to the property; however, he explicitly referenced McCall's knowledge as supporting a finding that no duty was owed. Hillis then elaborated on the significance of that knowledge in his reply in support of the motion. We will not ignore the relevant evidence of McCall's knowledge that Hillis expressly brought to the trial court's attention in his summary judgment motion and reply.

conditions about which the owner knows or has reason to know but the invitee does not. On the record before us, we hold that Hillis negated a duty to McCall as a matter of law.

### III. Conclusion

The trial court correctly granted summary judgment for Hillis on McCall's premises-liability claim. Accordingly, we reverse the court of appeals' judgment and render judgment that McCall take nothing.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** March 13, 2020