941 So.2d 468 (2006)
Felix QUINTANILLA, Appellant,
v.
CORAL GABLES HOSPITAL, INC., Appellee.
No. 3D05-1787.
District Court of Appeal of Florida, Third District.
November 1, 2006.
Feiler, Leach & McCarron and Martin E. Leach, Coral Gables, for appellant.
Schell, Mitchel & Cooley and Howard L. Citron, for appellee.
Before GREEN, SUAREZ, and LAGOA, JJ.
SUAREZ, J.
Felix Quintanilla appeals from the entry of a final summary judgment in favor of Coral Gables Hospital, Inc., d/b/a Coral Gables Hospital, finding that Quintanilla's negligence claim against Coral Gables *469 Hospital is a medical malpractice claim, that Quintanilla's failure to comply with the pre-suit notice and investigation requirements of the medical malpractice act required dismissal of the case, with prejudice, and that Quintanilla is now time-barred from bringing this action. We reverse.
Quintanilla was admitted as a patient to Coral Gables Hospital in September, 2002, complaining of a cough, shortness of breath, bronchitis and nasal congestion. On October 1, 2002, he requested hot tea from the nurse who spilled it on Quintanilla while serving it to him resulting in burns on his legs and thigh. Quintanilla filed a simple negligence complaint against Coral Gables Hospital on October 19, 2004, alleging that the nurse, acting in the course and scope of her duty as an employee of Coral Gables Hospital, caused his injury by negligently spilling scalding hot tea on him, negligently failing to use reasonable precaution to prevent the hot tea from being spilled, and negligently brewing and storing the tea to such a temperature that it was unreasonably dangerous if spilled. Coral Gables Hospital answered and, as an affirmative defense, alleged that Quintanilla failed to comply with the pre-suit requirements under section 766.106, Florida Statutes (2002), by failing to file a notice of intent to initiate litigation with the hospital and by failing to have his claim corroborated by a medical expert as required by the statute.
Coral Gables Hospital filed its motion for summary judgment claiming that the serving of hot tea was the rendering of a medical service. Therefore, Quintanilla was required to comply with the pre-suit requirements of section 766.106, had not done so, and the statute of limitations had now run barring compliance. Coral Gables Hospital filed the affidavit of Maria De Los Santos, A.R.N.P., basically stating that it was her opinion that hot tea was a treatment modality for the cough associated with respiratory distress, and that the serving of food, fluids and other dietary and nutritional items, including hot tea, is part and parcel of medical care provided by the hospital staff to patients including Mr. Quintanilla. The trial court agreed that the claim was a claim for medical malpractice and entered final summary judgment which was timely appealed by Quintanilla.
Section 766.106(1)(a), defines a claim for medical negligence or medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." Not every wrongful act by a medical provider is medical malpractice. See Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993). To be a malpractice claim, a wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill. Lynn v. Mount Sinai Med. Ctr., Inc., 692 So.2d 1002, 1003 (Fla. 3d DCA 1997). The injury must be a direct result of receiving medical care or treatment by the healthcare provider. Goldman v. Halifax Med. Ctr., Inc., 662 So.2d 367, 371 (Fla. 5th DCA 1995). In order to determine whether the pre-suit requirement of chapter 766 applies, the question is whether the plaintiff must rely upon the medical negligence standard of care, as set forth in section 766.102(1), Florida Statutes (2005),[1] in order to succeed *470 in the plaintiff's case. Integrated Health Care Servs., Inc. v. Lang-Redway, 840 So.2d 974, 980 (Fla.2002).
Coral Gables Hospital argues that because the nurse used her medical judgment to agree to give Quintanilla the hot tea he requested for his cough, the actual act of serving the hot tea amounts to a medical service pursuant to section 766.106(1)(a). We disagree. This is simply a claim that arises out of the act of serving a cup of hot tea. This is not a claim that arises out of the nurse's medical judgment in giving Quintanilla the hot tea. The process of serving tea did not involve medical skill or judgment. The injury is not a direct result of receiving medical care from the provider. Even though, arguably, the nurse may have used her medical judgment to agree with Quintanilla's request for hot tea to help his condition, the process of serving the hot tea did not require medical skill or judgment. See Liles v. P.I.A. Medfield, Inc., 681 So.2d 711 (Fla. 2d DCA 1995) (a claim against a doctor and hospital for false imprisonment alleging failure to comply with the involuntary commitment provision of the Baker Act was not a claim for medical malpractice; plaintiff did not have to comply with pre-suit screening requirements; even though a medical diagnosis was necessary in order to involuntarily commit the patient, the process of complying with the statute did not require medical skill or judgment). Not only was Quintanilla not injured as a direct result of receiving medical care or treatment by the hospital employee, but in order to bring forth a claim of negligence, Quintanilla would not have had to show that a hospital employee breached a prevailing professional standard of care which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar healthcare providers, and that such a breach was the cause of his injuries. There does not appear to be a medical standard of care for serving hot tea. Therefore, Quintanilla was not required to comply with the medical malpractice pre-suit requirements.
The medical malpractice cases relied upon by Coral Gables Hospital are distinguishable. In each of the cases, the injury was as a direct result of receiving medical care or treatment by a hospital or hospital employee, and in order to prevail at trial, the plaintiff would have had to prove that a breach of prevailing professional standards was the cause of the injury in question. In Neilinger v. Baptist Hospital, Inc., 460 So.2d 564 (Fla. 3d DCA 1984), the plaintiff was injured when she slipped and fell in a pool of amniotic fluid while she was descending from an examination table under the direction and care of hospital employees. The accident occurred while the hospital was performing a direct medical service, and the plaintiff was injured as a direct result of receiving medical care or service. The plaintiff would have had to establish the acceptable and appropriate standard of care by a similar healthcare provider and that the breach of that standard was the cause of her injuries. In Puentes v. Tenet Hialeah Healthsystem, 843 So.2d 356 (Fla. 3d DCA 2003), the plaintiff alleged the dieticians and the kitchen employees aggravated her condition by giving her a diet contrary to what her doctor had ordered. The court determined that this was a medical malpractice case because her medical condition is what caused the doctor to order the hypoallergenic diet and speak personally to the *471 dietician who did not follow his orders. The plaintiff would have had to show that the hospital's failure to give her a hypoallergenic meal fell below the standard of care for patients who required special diets and that such breach was the cause of her injuries. Puentes, 843 So.2d at 358. In Goldman v. Halifax Med. Ctr., Inc., 662 So.2d at 367, the plaintiff's injury occurred when her breast implants ruptured during a mammogram due to the radiologist's improper operation of the machine which caused excessive pressure. This also was medical practice as it was a direct result of the plaintiff receiving medical care or treatment, and it would have been necessary for a professional to testify as to the standard of care.
For the above reasons, we conclude that Quintanilla's claim is not a claim for medical malpractice, but a claim for simple negligence that does not require compliance with section 766.106(1), pre-suit screening and notification.
Reversed and remanded.
NOTES
[1] (1) In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment acceptable and appropriate by reasonably prudent similar health care providers.