976 So.2d 582 (2008)
Franklin L. SMITH, Appellant,
v.
GROVE APARTMENTS, LLC, Appellee.
No. 3D06-688.
District Court of Appeal of Florida, Third District.
August 22, 2007.
Rehearing and Rehearing Denied February 15, 2008.
*583 Chasin & Stinson and Keith Chasin, Miami, for appellant.
Law Offices of Roland Gomez and Ronnie Guillen, Miami, for appellee.
Before GREEN, RAMIREZ, and SUAREZ, JJ.
Rehearing and Rehearing En Banc Denied February 15, 2008.
GREEN, J.
Franklin L. Smith, tenant, appeals an adverse final summary judgment entered in his personal injury action against his landlord, Grove Apartments, LLC. ("landlord"). Smith allegedly sustained his injuries when he resorted to self-help to correct a defective condition of the parking lot after the landlord refused to do so. The trial court entered summary judgment in favor of the landlord based upon its conclusion that Smith's injuries were not foreseeable as a matter of law. Because foreseeability in this context is an issue for the trier of fact, and there are other genuine issues of material fact, the entry of summary judgment was error and must be reversed.
The pleadings, record evidence, and reasonable inferences therefrom, which must be construed in the light most favorable to Smith as the non-moving party,[1] reveal that this is a relatively simple negligence case. Smith resided as a tenant in an apartment complex owned by the landlord. He sustained personal injuries on July 28, 2002, when he fell from his step ladder. At the time, he was attempting to clear and trim back overgrown foliage above the parking lot of the leased premises. The landlord had permitted the tree branches and vines over the parking lot to grow to the point where they were scratching vehicles, causing power outages, and hitting motorists in the eyes as they attempted to enter and exit their vehicles.
Prior to his use of self-help to trim back this overgrown foliage, Smith had repeatedly complained to the landlord about this problem in the parking lot. However, the landlord refused and/or failed to take any corrective action.[2] Prior to Smith's accident, Florida Power and Light came out to cut back those trees surrounding its power lines that were causing the power outages. Florida Power and Light, however, declined Smith's request to trim back the remaining overgrown trees because *584 they didn't impact the company's power lines.[3]
Thus, after the landlord and Florida Power and Light both declined to trim back the remaining overgrown tree branches and vines in the parking lot, Smith decided to exercise self-help to alleviate this problem for himself and other tenants and invitees. In fact, according to Smith's testimony, the landlord's maintenance supervisor actually suggested that Smith cut the trees for himself.[4]
On the day of the accident, Smith placed his 12 foot aluminum single ladder against a holly tree that he described as "almost all limbs."[5] He had with him a machete and chain saw that he utilized to remove tree branches. He fell from the ladder as he was reaching to pull a dead limb from the holly tree.[6] As a result of his fall, he sustained serious bodily injuries.
Smith filed the instant negligence action against the landlord. The complaint alleged, among other things, that the landlord owed Smith and the other tenants a duty to use reasonable care for the maintenance of the parking lot. It was further alleged that the landlord breached his duty by failing to trim back these overgrown trees in the parking lot after being put on notice of the same. As a result of the landlord's breach of its duty to maintain this common area, Smith alleged that he resorted to "self-help" to make the parking lot useable for himself and other tenants and invitees on the leased premises and was injured as a result.[7]
*585 The landlord filed its motion for summary judgment on the grounds that the alleged improper maintenance was not the direct or legal cause of the tenant's injuries as a matter of law. Rather, the landlord essentially argued that Smith's own voluntary act of climbing onto his ladder to trim back the trees was an intervening or superseding cause of his injuries. In response to this motion, Smith argued that the landlord had both a statutory and common law duty to maintain its parking lot properly as one of the common areas of the leased premises; the landlord breached this duty by not trimming back the overgrown trees and vines. He further argued that the landlord would be liable for his injuries if the jury found that his injuries were a foreseeable result of the landlord's breach of its duty. See Bean v. Carey's Rental Agency, Inc., 532 So.2d 685 (Fla. 3d DCA 1988); Bennett M. Lifter, Inc. v. Varnado, 480 So.2d 1336 (Fla. 3d DCA 1985).
The trial court granted the landlord's motion and entered final summary judgment in the landlord's favor. Although the trial court found that the landlord had a duty to his tenant to trim the trees and breached this duty when it failed to do so, the trial court nevertheless found as a matter of law, that the tenant's injuries were not a foreseeable result since the tenant voluntarily performed the maintenance services using his own ladder and equipment.
On appeal the tenant argues that the trial court erred in entering summary judgment where the issue of foreseeability in this case was one for the trier of fact. We agree and reverse.
We initially acknowledge that our standard of review of this final summary judgment is de novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla. 2001) ("The standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo."). Further, we note that a summary judgment should be granted with caution in negligence and malpractice actions. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985); Wal-Mart Stores, Inc. v. Tracz, 799 So.2d 413, 414 (Fla. 5th DCA 2001); Lindsey v. Bill Arflin Bonding Agency, Inc., 645 So.2d 565, 566-67 (Fla. 1st DCA 1994). As the Supreme Court has stated:
Summary judgments should be cautiously granted in negligence and malpractice suits. The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law.
If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.
Moore, 475 So.2d at 668 (citations omitted).
The movant for summary judgment in a negligence action must demonstrate as a matter of law either that there is no negligence or that the sole proximate cause of the injury was the plaintiff's negligence. See Bryant v. Lucky Stores, Inc., 577 So.2d 1347, 1349 (Fla. 2d DCA 1990). *586 "To establish that there was no negligence the movant must demonstrate that there is no duty owed to the plaintiff or that it did not breach a duty which is owed." Id. (citing Cutler v. St. John's United Methodist Church of Edwardsville, Ill., 489 So.2d 123 (Fla. 1st DCA 1986)).
In the context of a landlord/tenant relationship, the law is well settled that after a tenant takes possession of a residential dwelling unit a landlord has a continuing statutory duty to maintain common areas in a safe condition and to repair dangerous, defective conditions upon notice of their existence, unless otherwise agreed to by the tenant.[8]See § 83.51(2)(a)3., Fla. Stat. (2007);[9]Mansur v. Eubanks, 401 So.2d 1328, 1330 (Fla.1981) (the owner has a duty "to transfer a reasonably safe dwelling unit to the tenant [and] . . . to exercise reasonable care to repair dangerous, defective conditions upon notice of their existence by the tenant," unless the tenant waived such defects). The policy reason for imposing this duty on the landlord was explained by the Supreme Court in its seminal Mansur decision.
We do not believe there are sufficient reasons to continue to completely insulate the landlord from liability. We live in an age when the complexities of housing construction place the landlord in a much better position than the tenant to guard against dangerous conditions.
Mansur, 401 So.2d at 1330.
The parking lot area in the instant case is most assuredly a common area of the leased premises. As stated earlier, the lease agreement did not impose a duty upon the tenants to maintain the parking lot area. Therefore, the landlord retained its statutory duty to maintain the parking lot area in a clean and safe condition.
The landlord's liability in this personal injury action appears to be primarily grounded upon its statutory violation of section 83.51(2)(a)3, in failing to properly maintain the parking lot.[10] Accordingly, the threshold question is whether Smith comes within the class of persons this statute was intended to protect. See *587 Bennett M. Lifter, Inc., 480 So. 2d at 1338. That is generally a question of fact for the trier of fact. Id. However, in this case, it cannot be disputed that Smith as a tenant, was within the protected class. The trial court's implicit legal determination then, that he was within the protected class, was therefore correct. Id.[11]
The remaining issues in this case are whether the landlord breached this statute by failing to trim back the trees; whether the injuries suffered by Smith are the type that this statute was intended to prevent; and whether the landlord's violation of the statute was the proximate cause of Smith's injuries. Bennett M. Lifter, Inc., Under well-established Florida law, these are all issues to be resolved by the trier of facts and the trial court reversibly erred when it entered final summary judgment in favor of the landlord in this case. See Cold Storage Café, Inc. v. Barone, 779 So.2d 371 (Fla. 2d DCA 2000) (whether the condition of the window on the leased premises on the date of the accident was dangerous, e.g., because the window should have contained safety glass instead of plate glass, is an unresolved issue of fact that precluded summary judgment); Grant v. Thornton, 749 So.2d 529 (Fla. 2d DCA 1999) (summary judgment reversed where tenant was injured while exiting through front window of apartment during fire and alleged that landlord had violated County building and fire codes by maintaining front door with a deadbolt that required key to be used to exit); Bosket v. Broward County Hous. Auth., 676 So.2d 72 (Fla. 4th DCA 1996) (the issues of whether landlord breached duty to provide tenant with readable stove knobs allegedly requested by tenant, as well as duty to maintain fire extinguisher in safe working condition, were for jury to decide; the directed verdict in landlord's favor reversed); Bean v. Carey's Rental Agency, Inc., 532 So.2d 685 (Fla. 3d DCA 1988) (summary judgment reversed in action brought by father of deceased child who died as a result of inhaling noxious fumes from mineral spirits supplied by apartment manager to child's mother who was painting apartment upon the landlord's refusal to do so).
In fact, all of these remaining issues of fact have generally been addressed in terms of proximate causation. See Bennett M. Lifter, Inc., 480 So.2d at 1338 ("[I]n personal injury cases where liability is grounded in a statute or ordinance violation, questions of whether a plaintiff comes within the class of persons intended to be protected by the statute or ordinance and whether the injury is of the kind generally intended to be prevented have been dealt with in terms of proximate cause and, as such, are subject to the determinations of the triers of fact.") (citations omitted). The Florida Supreme Court has stated that proximate causation is established "if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question. . . . However, . . . it is immaterial that the defendant could not foresee the precise manner in which the injury occurred or its exact extent." McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992) (citation omitted) (emphasis added); see Hernandez v. State, 959 So.2d 355 (Fla. 3d DCA 2007) ("Because we think it obvious that the possibility that the only other also-intoxicated driver would indeed actually drive the vehicle upon Jose Enrique's inability or unwillingness to do so was directly within the zone of danger created *588 by Jose Enrique's conduct in the first place . . ., it does not matter under the law that Jose Enrique was unable to foresee `the exact concatenation of events,' . . . which actually culminated in the accident") (citations omitted). Additionally, proximate causation does not require an injury to result directly from the tortfeasor's act. Rather, proximate causation exists where the injury "results as a consequence so natural and ordinary as to be regarded as probable." Bosket, 676 So.2d at 74 (citing Bennett M. Lifter, Inc., 480 So.2d at 1339-40).
[W]here reasonable persons could differ as to whether the facts establish proximate causationi.e., whether the specific injury was genuinely foreseeable or merely an improbable freakthen the resolution of the issue must be left to the fact-finder. The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.
McCain, 593 So.2d at 504 (citations omitted).
In this case, Smith claims that he, a tenant, was injured when he resorted to self-help to correct a deficiency in a common area of the leased premises after the landlord refused to act. Reasonable people could differ as to whether it was foreseeable that, upon the landlord's refusal to act, someone would ultimately take corrective measures to eliminate these overgrown trees in the parking lot, which allegedly scratched motor vehicles and hit motorists in their faces as they entered and exited their vehicles.[12] As we observed in Bennett M. Lifter, Inc., it cannot be said in this case that the harm that resulted from the defendant's action or omission is so bizarre or has happened so infrequently that "in the field of human experience it could not have been reasonably anticipated." 480 So.2d at 1339.
In fact, this case is virtually indistinguishable from our Bennett M. Lifter, Inc. decision. In Lifter, an electric hot water heater in a leased house remained inoperable for three days, although the landlord had been put on notice of the same. As a result, a mother and grandmother filled the bathtub with water boiled on the stove presumably for bathing purposes. As the grandmother was transporting a pot of water to the bathtub, she collided with her grandchild who had been sent from the bathroom by his mother to give the grandmother a message. The child was injured by the hot water; an action was filed against the landlord. The case proceeded to trial and a verdict was rendered in favor of the plaintiffs and against the landlord. On appeal, the landlord argued (as does the landlord here) that it was entitled to a judgment as a matter of law because (1) it breached no duty requiring it to conform to a certain standard of conduct for the protection of others, including the plaintiffs, and (2) the alleged breach of duty was not the proximate cause of the accident. 480 So.2d at 1337. On the proximate causation issue, the landlord argued that the mother's own acts were the direct cause of the accident, i.e., her act of boiling water rather than merely heating it, and her act of instructing the young child to go to the specific area where she knew the grandmother might be carrying boiling water. Id.
We rejected these arguments and affirmed the verdict and denial of the motion for new trial on appeal. As to the landlord's first argument, regarding the landlord's duty, we affirmed the trial court's *589 implicit determination that the County's minimum housing standards imposed a duty upon the landlord to provide hot running water. Id. at 1338. As to the second issue of proximate causation and foreseeability, we held that it was for the trier-of-fact to determine whether the broken water heater was the proximate cause of the child's injuries and whether intervening superseding causes were presented by the grandmother's act of transporting the hot water and/or by the mother's act of sending the child with a message.
Application of the foreseeability test to intervening causes is generally the responsibility of the trier of fact. It is said that the issue will be decided as a matter of law only in cases where reasonable men could not differ. As a guide to what is a case "where reasonable men could not differ," our courts have employed notions of fairness and policy consideration so as to appropriately relieve a defendant of liability only in highly unusual, extraordinary cases or those with bizarre consequences. It cannot be said in this case that the harm which resulted from the defendant's action or omission is so bizarre or has happened so infrequently that "in the field of human experience" it could not have been reasonably anticipated.
Bennett M. Lifter, Inc., 480 So.2d at 1339 (citations omitted).
Similarly in this case, as stated earlier, the landlord had a statutory duty to make reasonable provisions for the clean and safe condition of common areas. See § 83.51(2)(a)3, Fla. Stat. (2007). The issues of whether the landlord breached this duty by failing to trim back the trees in the parking lot and whether the injury sustained by the tenant in this case was of the type of injury that this statute was intended to prevent are questions of fact for the trier of fact. Id.; Bosket; Bean. Moreover, the question of whether the tenant's own actions was an intervening and independent cause of his injuries so as to relieve the landlord of any liability are also factual issues for the trier of fact. See Bosket, 676 So.2d at 74 ("whether the evidence shows there was intervening cause related to the factual question of the defendant's proximate causation and is to be determined by the fact-finder") (citing McCain, 593 So.2d at 504).
Thus, for all of the foregoing reasons, the summary judgment in this cause must be reversed and this cause must be remanded for further proceedings.
Reversed.
SUAREZ, J., concurs.
RAMIREZ, J. (dissenting).
I dissent from our decision. First, I do not believe the plaintiff has ever stated a cause of action for negligence.[1] In my view, the trial court was eminently correct in ruling that the failure to trim the bushes at the parking lot owned by Grove Apartments and the plaintiff's voluntary assumption of that task cannot form the basis for a personal injury action after the plaintiff climbed up a ladder and fell, injuring himself. My view, however, is not based on the lack of proximate cause, as that is generally for the jury to decide. It is based on the lack of duty, which is a legal issue.[2]
*590 A complaint in negligence must allege that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) the breach of care proximately caused the injuries the plaintiff claims; and (4) damages are owed. Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984). In his complaint, Smith alleged that he fell as a result of his own efforts to cut the branches. Smith's complaint contains no explanation as to how he actually fell.[3] The complaint states as follows:
4. On July 28, 2003 Plaintiff, FRANKLIN L. SMITH, fell from a ladder while performing landscaping maintenance in the parking lot at Grove Apartments. This fall caused Plaintiff to sustain personal injuries.
5. The Plaintiff, FRANKLIN L. SMITH, went onto this ladder in an effort to use "self-help" to make the parking lot useable for himself and other tenants and invitees at Grove Apartments.
6. Plaintiff, FRANKLIN L. SMITH, resorted to self help because the Defendant, GROVE APARTMENTS, LLC, by and through its agents and employees, had been repeatedly asked by Plaintiff and others to trim back trees that had become overgrown in the parking lot, so overgrown that the trees were causing damage to cars parked in said lot. In addition to the damage to the cars, the overgrowth caused power outages and injury to persons exiting and entering their vehicles.
7. Despite these numerous requests for landscaping maintenance, Defendant, GROVE APARTMENTS, LLC, did nothing to trim back these overgrown trees.
8. The Defendant, GROVE APARTMENTS, LLC, owed Plaintiff, FRANKLIN L. SMITH, the duty to use reasonable care in maintaining the parking lot used by the tenants.
9. Defendant, GROVE APARTMENTS, LLC, failed to maintain the premises in a reasonable fashion, and thereby breaching the duty of care it owed to Plaintiff, FRANKLIN L. SMITH.
10. As a result of Plaintiff, FRANKLIN L. SMITH's efforts to cut the branches, the Plaintiff fell and thereby sustained personal injury . . .
I agree that Grove Apartments owed plaintiff the duty to use reasonable care in maintaining the parking lot, but he was not injured by the parking lot, or even the overgrown branches. Lacking from the complaint is any allegation as to how *591 Grove Apartments breached a duty to make Smith's trimming activity safe.[4]
Taking the evidence in the light most favorable to plaintiff, we have a situation where overgrown branches had created a danger with the electrical wires, but plaintiff admitted in his deposition that this danger was corrected by Florida Power and Light before he climbed up the ladder. We are then left with branches that are scratching cars and poking people in the eye, but plaintiff is not suing for the scratches on his car or in his eyes.
Assuming further, as we must, that plaintiff was invited to trim the branches by Grove Apartment's agent, Mr. Placencia. The culprit branches are clearly visible in the photographs which are part of the record. They are all, at most, five to six feet high. In fact, that is precisely why they are scratching cars and poking eyes. Why do we assume that when the plaintiff is invited to trim the branches he will even need a ladder? There is nothing in this record to place Grove Apartments on notice of a "dangerous or defective condition" that is any higher than six feet tall. I would analogize what occurred here to a situation where the landlord refuses to replace a burnt-out light bulb and the tenant, in exercising "self-help," electrocutes himself while replacing the electrical wiring.
The issue before us is whether the landlord owed a duty to Smith to make his activity safe when he undertook to trim not only the low branches which were scratching the cars and people's eyes, but the high branches which were neither dangerous nor aesthetically unattractive.[5] We know that the landlord (1) did not provide the instrumentalities for the activity; (2) did not direct the manner for conducting the activity; and (3) did not possess knowledge of a danger superior to that of the plaintiff. In fact, there is nothing in this record to indicate that the landlord even knew Smith was going to climb a ladder.[6] I see a big difference between the duty to maintain the premises in a safe condition and the duty to insure the safety of Smith when he undertook the particular tree-trimming activity in this case.
Smith was not hired by the landlord to trim the bushes. Even if it had, the case law does not support the conclusion that the landlord is automatically liable for any injuries Smith sustained in the process. See St. Lucie Harvesting and Caretaking Corp. v. Cervantes, 639 So.2d 37, 38-39 (Fla. 4th DCA 1994) (holding that one who hires an independent contractor is not liable for injuries sustained by employees of the independent contractor, unless the owner actively participates by directly influencing the manner in which the work is performed, and negligently creates or allows a dangerous condition to exist resulting *592 in injury to the employee of the independent contractor).
Smith used his own ladder and his own trimming equipment. He decided on the time and the manner in which to trim the trees. Besides the lack of allegations in the complaint, his own testimony fails to establish how the landlord was responsible for his fall.[7] It is clear from Smith's own testimony that he leaned the ladder against a dead limb of a Holly tree and when he reached out, the ladder fell with him. I fail to see how the landlord could be held liable for the accident.
The majority dismisses these arguments pejoratively stating that the dissent has misapprehended the landlord's duty, causing the dissent to mischaracterize the issue. The dissent is further accused of failing to grasp the theory of liability of this case. Respectfully, in my view, it is the majority that lacks analytical precision in its definition of the duty owed in this case. The inescapable fact is that Smith was not injured by the premises. He was injured by falling off a ladder.[8]
The common law would have immunized the landlord from any liability. See, e.g., Brooks v. Peters, 157 Fla. 141, 25 So.2d 205, 206 (1946) ("It is established law that when a landlord delivers to the tenant possession and control of the demised premises, including the plumbing, drains, and appliances for heating, lighting, and power, the landlord is not liable for an injury to the property or person of the tenant or those on the premises . . ."). But in 1973, the Florida legislature enacted the Florida Residential Landlord and Tenant Act (section 83.40 et seq.), which includes section 83.51. In Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980), the court applied the statute to a slip and fall case reasoning that because the hallway and patio were provided for the common use and benefit of the tenants, the landlord was required by section 83.51(2)(a)3 to keep these areas safe and clean. Id. at 875. The First District concluded that a violation of this statutory duty would be evidence of negligence. Id.
The Florida Supreme Court followed in Mansur v. Eubanks, 401 So.2d 1328 (Fla. 1981), where the tenant had brought suit against the landlord to recover for injuries sustained when gas fumes were ignited in the apartment. The Florida Supreme Court expressly overruled Brooks, stating: "After the tenant takes possession, the landlord has a continuing duty to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless waived by the tenant." Mansur, 401 So.2d at 1330 (emphasis added). The tenant in Mansur was injured by the dangerous condition of the premises.[9]Id. at 1329. But in the case before us, neither the majority opinion nor Smith have cited a single case in which a *593 landlord has been held liable for injuries sustained by a tenant while repairing a dangerous defective condition.[10]
I agree that if Smith had been injured by a dangerous defective condition, here the overgrown bushes, the landlord would be liable. For example, if this were a suit for property damages for scratching vehicles legally parked in the premises, I would agree to impose liability on the landlord. Additionally, if Smith had been poked in the eye with one of the branches, then the jury properly could decide whether the landlord should be liable for Smith's injuries. I will even concede that if Smith had been injured while trimming the low branches which were scratching the cars or people's faces, summary judgment would arguably be inappropriate. But that is not what happened here.
The same is true for section 83.51(2)(a)3, which requires the landlord to maintain common areas clean and safe. If Smith had been injured by the unsafe conditions, the landlord would be liable. While the landlord's duty to maintain the premises may impose liability for any injury caused by the unsafe conditions, in my view, it does not extend to the tenant's injuries sustained under the facts of this case.
Other cases relied upon by the majority also involved injuries by the premises. In Cold Storage Cafe, Inc. v. Barone, 779 So.2d 371 (Fla. 2d DCA 2000), the tenant was injured when a window shattered. In Bosket v. Broward County Hous. Auth., 676 So.2d 72 (Fla. 4th DCA 1996), the tenant suffered burns from a grease fire, which occurred when he left some oil heating in a pan on the stove. Id. at 73. He alleged that the landlord was negligent in failing to maintain readable knobs on the stove and in failing to inspect and/or maintain the fire extinguisher provided in the townhouse. Id. In Siegel v. Deerwood Place Corp., 701 So.2d 1190 (Fla. 3d DCA 1997), the tenant claimed he fell down the stairs of the townhouse because the stairway had been negligently designed, installed, and maintained. Id. at 1191. In all three cases, the tenant was injured by the premises-a shattering window, a dangerous stove, or a stairway. None of tenants was injured while voluntarily undertaking to repair the premises. If the tenant in Siegel had been injured while repairing the stairs, for example, by improperly using a circular saw, then it would be analogous to our case.
Another case cited by the majority, Bean v. Carey's Rental Agency, Inc., 532 So.2d 685 (Fla. 3d DCA 1988), involved an eighteen-month old son of a tenant who died when he spilled on himself and inhaled the noxious fumes of a substantial quantity of a hazardous paint thinner. Id. at 686. The tenant argued that he was painting the apartment upon the landlord's refusal to do so, despite the apartment's having been cited for housing code violations relating to the unsanitary condition of the walls and ceilings. Id. However, the court held that it was a jury issue because the landlord's agent had given the tenant the paint thinner by pouring it into a plastic one-liter soda bottle with a cut-off top knowing that inhaling the fumes was dangerous but failed to warn the tenant of this. Id. As we know, in our case, the landlord provided nothing to Smith.
The majority also relies on cases where the landlord was alleged to have violated a specific statute or ordinance. In Grant v. Thornton, 749 So.2d 529 (Fla. 2d DCA 1999), where the tenant was injured in a *594 fire, the complaint alleged that the landlord had created a dangerous condition on the premises by negligently maintaining the front door which contained a double cylinder deadbolt, requiring a key to be used to exit from the inside, in violation of Manatee County building and fire codes. Id. at 530. And in Bennett M. Lifter, Inc. v. Varnado, 480 So.2d 1336 (Fla. 3d DCA 1985), the minimum housing standards set forth in section 17-23 of the Metropolitan Dade County Code imposed a duty upon the landlord to provide hot running water.[11] In this case, even if the landlord had a duty to trim branches which were scratching cars and eyes, it had no duty to prune the high branches of the Holly tree which the tenant undertook to trim.
There is no specific statute here that the landlord violated. The general statute requiring common areas to be "clean and safe" does nothing more than what the Florida Supreme Court in Mansur referred to as "the statutory warranty of habitability" noted by Judge Ervin in his concurring opinion in Mansur. Mansur, 401 So.2d at 1330.
It would seem beyond debate that it was Smith's burden to explain how he fell. In Miller v. Aldrich, 685 So.2d 988 (Fla. 5th DCA 1997), another case involving a fall from a ladder, the court stated that it was plaintiff who "had the initial burden of establishing why he fell from the ladder, and some link between his fall and a breach of a duty owed him by one of the [defendants], or that his mere fall was inferentially attributable to a failing on the part of one or both of the [defendants]." Id. at 990. These were totally lacking in Miller, as they are in our case. The Miller court affirmed summary judgment for the defendants, explaining in language equally applicable to our case:
[If the defendants] owed Miller a duty to exercise reasonable care in doing what they did, there is no suggestion as to how they breached that duty and thus no suggestion as to how that unknown breach proximately caused Miller's injuries. This is the necessary consequence of not being able to suggest a reason why Miller fell from the ladder in the first place. The fact that an accident occurred does not, in an ordinary case, establish breach of a duty by another party, or causation.
Id. at 989-90.[12] Given Smith's own testimony as to how he fell, how is the landlord liable? We could say that under our system of comparative negligence, the jury can determine what percentage of negligence is changeable to each, but under the facts of this case, I do not see how the landlord can be held liable.
*595 There are any number of reasons why the plaintiff could have fallen: (1) he negligently performed the activity, such as leaning the ladder on the dead limb of a Holly tree that gave way when he reached out on the ladder; (2) the ladder was defective; (3) a strong wind pushed the ladder over; (4) a third person collided with the ladder causing it to fall; (5) there was a latent defect, and the landlord had superior knowledge of the danger, such as a sink hole, that caused the ladder to fall; and (6) the landlord negligently directed how Smith should trim the trees. Smith's own testimony establishes that the first reason is the answer. Only the last two could form the basis for imposing liability on the part of the landlord. Unfortunately for Smith, he has neither alleged nor testified to either of those contingencies. On the contrary, the facts show that the landlord had nothing to do with his fall.
If the landlord had supplied the ladder, Smith then could have argued that the ladder was defective and thereby could have avoided summary judgment. See Ortiz v. Lorie, 921 So.2d 868, 870 (Fla. 4th DCA 2006) (reversing summary judgment where plaintiff relied on a theory of liability based upon the duty of a principal to see that the instrumentalities that he provides to an independent contractor are reasonably safe for use; plaintiff alleged that defendant negligently furnished a defective ladder for his use). Smith, however, used his own ladder.
In Hurst v. Astudillo, 631 So.2d 380, 381 (Fla. 3d DCA 1994), a homeowner called Astudillo to make repairs to Hurst's home. During their joint inspection, they decided to climb the side of the house. Id. Hurst placed his own ladder in such a fashion as to enable the two men to climb up to the roof. Id. Hurst successfully went up to the roof first. Id. Astudillo began his ascent and then fell, injuring himself. Id. In finding that the Astudillo's fall, standing alone, did not support a finding of Hurst's negligence, we stated that:
Astudillo submitted no evidence that the ladder was defective, and further, no evidence that the placement of the ladder against the roof eaves created a dangerous condition. Astudillo himself did not know if the ladder slipped or, if it slipped, what caused it to slip. . . . Inferences may be pyramided only if the initial inference is established to the exclusion of any other reasonable theory.
Id.
Here, unlike in Hurst, it would do Smith no good to allege that the ladder was defective because the landlord did not supply it. The facts are undisputed that it was Smith's own ladder. Unlike Astudillo, Smith also cannot allege that the landlord improperly placed the ladder against the dead limb of the Holly tree because Smith did that himself. The landlord was nowhere near the scene of the accident. We neither have an inference, nor even the allegation of an inference, that we can begin to pyramid in order to find liability on the part of the landlord.[13]
In Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468 (Fla. 3d DCA 2006), we reversed the trial court's dismissal of a suit against the hospital after a nurse spilled scalding hot tea on Quintanilla while he was a patient. Id. at 469. The hospital argued that the serving of the tea was the rendering of a medical service and dismissal was proper for failure to comply with the medical malpractice pre-suit requirements. Id. The nurse testified that in her opinion, the hot tea was a beneficial treatment for Quintanilla's respiratory distress. *596 Id. In other words, "but for" her decision to treat his distress with hot tea, Quintanilla would never have suffered his burns. However, we recognized that it was not the decision to serve him tea that caused the injury, stating: "[t]he injury [was] not a direct result of receiving medical care from the provider." Id. at 470. Instead, we concluded that it was "simply a claim that arises out of the act of serving a cup of hot tea." Id. Similarly, in our case, Smith was not injured by the untrimmed trees but by falling off the ladder.
We stated in Vermeulen v. Worldwide Holidays, Inc., 922 So.2d 271 (Fla. 3d DCA 2006), that "[t]he mere happening of an accident does not give rise to an inference of negligence. . . . Mere speculation or inference of negligence is insufficient to defeat summary judgment." Id. at 273 (citations omitted). That is all we have in the case before us, an accident likely caused entirely by the plaintiff's own negligence.
Although I am sympathetic to Smith for falling and injuring himself, I believe Smith had no business climbing up a ladder, armed with a machete and a chain saw, after he leaned the ladder on a flimsy branch of a Holly tree. The unfortunate accident was entirely his own doing. My conclusion, however, is based entirely on the legal conclusion that the landlord had a duty to trim the high branches of the trees of the leased premises. Without a duty, there can be no liability.
NOTES
[1] Turner v. PCR, Inc., 754 So.2d 683 (Fla. 2000).
[2] Although the lease agreement made the tenants responsible for keeping the walkway to their respective apartments free from dirt and debris, it did not make them contractually responsible for the maintenance of the parking lot.
[3] Mr. Smith's testimony about Florida Power and Light was as follows:

Q. Did you ever call FP & L about cutting the bushes or the trees?
A. No.
Q. You hesitated when you gave that answer. Anything you want to add?
A. FP & L came out, the power had been out several times because of these trees in the power lines. I asked FP & L [sic] would they take the rest of them out. They were hanging over hitting people in the eyes. "It's not our job. Ours is to clear the lines the power lines."
Q. When was that?
A. It was before I started trimming. I know that. Prior to the July accident.
[4] Smith testified during his deposition that the landlord's agent, Jesus Placencia, suggested that Mr. Smith take the necessary corrective measures:

Q. Did anybody on behalf of Grove Apartments ask you to cut the trees or the bushes.
A. Jesus . . . I asked Jesus to trim the bushes, he said I don't have the equipment. If you have it you cut them. So I would say he would ask me to cut them.
Mr. Placencia, on the other hand, denied ever making this statement to Smith during his deposition testimony.
[5] Smith testified as follows:

Q. Where would the ladder have been leaning against?
A. One of these limbs. I wish we had a better picture.
Q. It was leaning against a limb opposed to a tree trunk?
A. Right. A holly tree is almost all limbs . . .
[6] Smith testified thusly in this regard:

Q. What were you doing, you were pulling a dead limb?
A. Reaching to pull a branch. It was a holly tree. They are intertwined. I reached up to pull that one. I did, I don't know what happened, the next thing I know the ladder was going down.
* * *
Q. The cause of your fall was you reaching for the holly tree branch, correct?
A. Yes.
[7] The dissent's conclusion that these allegations are insufficient to state a cause in negligence against the landlord is erroneous as a matter of law. In order to state a cause of action against a landlord for negligent failure to repair a dangerous or defective condition, the tenant need only allege that the landlord had either actual or constructive knowledge of the condition or of a statutory code violation for a sufficient time in which to make a correction. See Grant v. Thornton, 749 So.2d 529, 532 (Fla. 2d DCA 1999); Siegel v. Deerwood Place Corp., 701 So.2d 1190 (Fla. 3d DCA 1997); Bennett M. Lifter, Inc. v. Varnado, 480 So.2d 1336 (Fla. 3d DCA 1985).
[8] The dissenting opinion's misapprehension of a landlord's statutory and common law duty in this regard has unfortunately caused it to mischaracterize the issue in this case as whether the landlord somehow owed Smith a duty to maintain its premises in a safe condition for Smith's tree-trimming activities. See slip op. at_ (Ramirez, J., dissenting). The dissenting opinion's failure to accurately grasp the theory of liability of this case has therefore caused it to mistakenly string together and rely upon wholly distinguishable premise liability decisions outside of the landlord/tenant relationship. See e.g., St. Lucie Harvesting and Caretaking Corp. v. Cervantes, 639 So.2d 37 (Fla. 4th DCA 1994) (premise liability against grove owner by employee of independent contractor); Miller v. Aldrich, 685 So.2d 988 (Fla. 5th DCA 1997) (premise liability action against private homeowner); Ortiz v. Lorie, 921 So.2d 868 (Fla. 4th DCA 2006)(same); Hurst v. Astudillo, 631 So.2d 380 (Fla. 3d DCA 1994). See also Quintanilla v. Coral Gables Hosp., Inc., 941 So.2d 468 (Fla. 3d DCA 2006) (a purported medical malpractice action). In fact, the dissenting opinion cites to no decision involving the alleged negligence of a landlord that supports the affirmance of this summary judgment.
[9] This section provides that:

2(a) Unless otherwise agreed in writing, in addition to the requirements of subsection (1), the landlord of a dwelling unit other than a single-family home or duplex shall, at all times during the tenancy, make reasonable provisions for:
* * *
3. The clean and safe condition of common areas.
[10] Alternatively, the tenant argues that the landlord owed a common law duty to invitees to reasonably maintain its premises. Contrary to the dissent's suggestion, Smith was not required to plead this specific statutory violation in order to state a cause of action.
[11] In this regard, the trial court stated that "the Plaintiff occupied the status of either a tenant or an invitee, that the landlord failed to trim the trees when it was his responsibility to do so, and that the landlord's agent had no objection to the Plaintiff's actions."
[12] Indeed, in the realm of human experience, no motorist to this area would want to be subjected to such a condition on an ongoing basis.
[1] As Justice Benjamin Cardozo famously wrote in Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 341, 162 N.E. 99 (1928): "Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. `Proof of negligence in the air, so to speak, will not do.' Pollock, Torts (11th Ed.) p. 455."
[2] See William Prosser, Palsgraf Revisited, 52 MICH. L.REV. 1, 16 (1953) ("It needs no argument to show that duty does not always coincide with foreseeable risk.")

But the line between duty and foreseeability are not easily drawn. See William N. Drake, Jr., Foreseeable Zone of Risk: Confusing Foreseeability with Duty in Florida Negligence Law, 78 FLA. B.J. 10 (April 2004), quoting from American Jurisprudence 2d:
In fixing the bounds of duty, not only logic and science but also policy plays an important role, for, as it has been said, the imposition of a duty is an exercise of judicial policy making. A line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden. Thus, the courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation.
(Citing to 57A. AM.JUR. 2d Negligence § 87).
[3] That information, as set forth in the majority opinion, is derived from plaintiff's deposition.
[4] In footnote 7, the majority responds that plaintiff stated a cause by alleging that the landlord failed to repair a dangerous or defective condition of which it had knowledge for a sufficient time in which to make a correction. I would agree, if plaintiff had alleged that he was injured by the defective condition.
[5] Even if the high branches had been unattractive, and the record does not indicate that they were, the landlord is only responsible for maintaining the common areas in a clean and safe condition.
[6] Admittedly, if it were foreseeable that Smith was going to climb a ladder, it would also have been foreseeable that he could fall, as people sometimes do; but I see nothing in the record (1) that created a duty to trim the high branches of the Holly tree; (2) that after FP & L trimmed the trees, there was any further problem with the high branches; (3) that placed the landlord on notice of the need to climb a ladder to trim the high branches; or (4) that Smith was planning to climb a ladder to trim the high branches.
[7] See footnotes 5 and 6 of the majority opinion.
[8] The discussion of negligence in American Jurisprudence 2d also contains the following caveat:

In respect to the law of negligence, foreseeability should not be confused with duty. If there is no duty, the principle of foreseeability to determine the scope of duty is inapplicable. And foreseeability should not be employed as the sole means to create a duty where none existed before.
57A AM.JUR. 2d Negligence § 138, p. 198.
[9] The majority opinion states in footnote 10 that the lack of pleading specificity can be overlooked because Smith was relying on the landlord's common law duty to invitees to maintain the premises in a reasonably safe condition. In his brief, however, Smith relies on Mansur as support for the landlord's duty of care, not a common law duty, which did not exist.
[10] This is particularly germane here where the tenant went beyond repairing the dangerous condition, allegedly the offending low branches, to climb up a ladder and trim non-offending high branches.
[11] The facts of this case are set out in detail in the majority opinion. It expressly stated that the duty was created by section 17-23 of the Metropolitan Dade County Code. That ordinance imposed a duty upon the landlord to provide hot running water. Id. at 1338. Our statute, on the other hand, only creates a duty to maintain the common areas "clean and safe." Furthermore, the tenant was not injured fixing the inoperable hot water heater. If viewed only from the standpoint of proximate cause, I agree that Varnado would support the majority decision in our case, but the duties in Varnado and our case are entirely different.
[12] The majority summarily rejects the applicability of all cases outside the landlord/tenant relationship. But a homeowner, like a landlord, has a non-delegable duty to use reasonable care in maintaining the premises in a reasonably safe condition, and to give invitees warning of any latent and concealed perils on the premises. See Smith v. Mayes, 851 So.2d 785, 787-88 (Fla. 1st DCA 2003). As to these duties, our courts treat them the same. See, e.g., Wimbush v. Gaddis, 713 So.2d 1107 (Fla. 4th DCA 1998) (stating that "[a]n owner of real property [here a landlord] is neither an insurer of the safety of persons on the property nor subject to strict liability for injuries.").
[13] The applicability of this case falls within the category which the majority summarily rejects as falling outside the landlord/tenant relationship. See footnote 12, supra.