# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case Nos. 6D2025-1964, 6D2025-1978
CONSOLIDATED
Lower Tribunal No. 2025-CA-001373

_____

CAPE CORAL EMERGENCY PHYSICIANS, LLC, MARTEN KARLSSON, and KEITH BURLEY,

Petitioners,

v.

JANE DOE and JOHN DOE,

Respondents.

LEE HEALTH SYSTEM, INC., and SHANNON RICE,

Petitioners,

v.

JANE DOE, JOHN DOE, CAPE CORAL EMERGENCY PHYSICIANS, LLC, MARTEN KARLSSON, and KEITH BURLEY,

Respondents.

_____

Petitions for Writ of Certiorari to the Circuit Court for Lee County.
James Shenko, Judge.

April 10, 2026

STARGEL, J.

Petitioners, Cape Coral Emergency Physicians, LLC, Marten Karlsson, and Keith Burley; and Lee Health System, Inc., and Shannon Rice, seek a writ of certiorari quashing the denial of their motions to dismiss several counts of the amended complaint filed by Jane Doe and John Doe (collectively "the Does") for failure to comply with the presuit requirements for medical malpractice actions under chapter 766, Florida Statutes (2022).[1] Petitioners argue that the trial court erred in concluding that the claims at issue were not governed by chapter 766 because they were for sexual assault, not medical malpractice. We find merit in Petitioners' argument, grant their petitions, and quash the denial of their motions to dismiss as it pertains to the claims at issue.

Background

The amended complaint below alleges that on May 8, 2023, Jane Doe presented to the Cape Coral Hospital emergency department due to complications with her foley catheter following a hysterectomy. During this visit, the Does allege that Physician Assistant Marten Karlsson inappropriately performed a vaginal exam that Doe felt she was forced to undergo. At the time of Doe's visit to the emergency

---

[1] Cape Coral Emergency Physicians, Karlsson, and Burley filed the petition in Case No. 6D25-1964. Lee Health and Rice filed the petition in Case No. 6D25-1978.

2

department, Karlsson was under the supervision of Dr. Burley, a Florida licensed physician. Shannon Rice was a Florida Registered Nurse employed by Lee Health.

The amended complaint further alleges that following an unsuccessful attempt to flush and replace Doe's catheter, Karlsson instructed Nurse Rice to keep pushing fluids until the clog cleared. Nurse Rice returned to Doe with another nurse who instructed Nurse Rice to replace the catheter for a second time. When the second catheter was inserted, Doe's bladder drained. Karlsson allegedly returned and advised Doe that after speaking with the on-call urologist, he was going to perform a vaginal exam. Doe refused to give consent, demanded a female physician, and requested Karlsson to contact her gynecologist. Doe explained to Karlsson that her gynecologist told her that nothing should be inserted into her vagina for several weeks following her procedure. Doe also requested someone from the obstetrics department to be brought in, which Karlsson allegedly would not allow. After Karlsson and Nurse Rice both advised Doe that there was no female physician or physician assistant working anywhere in the emergency department, Doe felt she had no choice but to undergo the exam.

The amended complaint alleges that at all times during the exam, Nurse Rice "was sitting in the corner of the room, looking at her cell phone and not monitoring the situation and/or ensuring that protocols were followed." The amended complaint described in specific detail how Karlsson allegedly conducted the exam in an inappropriate manner, including forcefully pushing Doe's legs back open when she

3

instinctively closed her legs and moving his fingers by sliding them up as far as he could and starting to seemingly "play" inside of her. The amended complaint further alleged how Karlsson touched Doe inappropriately and that she again protested against the exam and raised her voice telling him to stop. Karlsson allegedly responded by telling Doe to calm down and let him do his job and that he would stop when he was done. Upon concluding the exam, the amended complaint alleges that Karlsson told Doe, "[y]ou're fine. I don't know why you were so unhappy by your exam" and then stood up and walked out of the room without saying another word. According to the amended complaint, "[Nurse] Rice did nothing when Jane Doe protested and/or said to stop."

On December 5, 2024, the Does served a notice of intent to initiate litigation against Karlsson, along with an expert affidavit of Amanda M. Kane, M.D. F.A.C.O.G., a board-certified gynecologist. The Does filed their initial complaint on March 11, 2025, followed by their amended complaint on May 15, 2025, asserting various claims against Karlsson, Cape Coral Emergency Physicians, Dr. Burley, Nurse Rice, and Lee Health. As pertinent here, the Does asserted claims against Dr. Burley for negligent supervision (Count XI), vicarious liability (Count XII), and loss of consortium (Count XIII); against Nurse Rice for fraudulent inducement (Count XIV) and loss of consortium (Count XV); and against Lee Health for vicarious liability (Count XVI) and loss of consortium (Count XVII).

4

Dr. Burley, Nurse Rice, and Lee Health moved to dismiss the claims against them for failure to comply with the presuit requirements for medical malpractice actions in chapter 766.[2] The Does filed a response in opposition arguing (1) that the case was a sexual assault case, not a medical malpractice case, and therefore was not subject to chapter 766; and (2) despite the case stemming from a sexual assault, they had complied with the presuit requirements by providing a presuit notice to Karlsson.

The trial court declined to dismiss the claims at issue, finding they were "claims for sexual assault and not claims for medical negligence. As such they are not governed by [c]hapter 766, Florida Statutes." However, the court found that if this Court were to hold that the claims at issue sounded in medical negligence and were governed by chapter 766, the notice served on Karlsson was insufficient as to Dr. Burley because Dr. Kane's affidavit failed to meet the "same specialty" requirement in section 766.102(5)(a). The court also found that Dr. Kane had the ability to render an opinion as to whether Nurse Rice's performance fell below the applicable standard of care, but she did not render such an opinion, and therefore the notice served on Karlsson was insufficient as to Nurse Rice.[3]

---

[2] Two separate motions to dismiss were filed, one by Cape Coral Emergency Physicians, Karlsson, and Dr. Burley; and a second by Nurse Rice and Lee Health. The motions raised other grounds for dismissal that are not at issue in this proceeding.

[3] The trial court dismissed Count XIV against Nurse Rice and two claims against Karlsson on other grounds not at issue here.

Analysis

To be entitled to certiorari relief, a petitioner must establish "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be remedied on postjudgment appeal." *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011); *Begonja v. Wyndham Vacation Resorts, Inc.*, 374 So. 3d 887, 890-91 (Fla. 6th DCA 2023). The latter two elements, otherwise known as "irreparable harm," are jurisdictional and must be analyzed before determining whether there has been a departure from the essential requirements of law. *Williams*, 62 So. 3d at 1132; *Regala v. McDonald*, 397 So. 3d 742, 746 (Fla. 6th DCA 2024).

Chapter 766, Florida Statutes, establishes "a complex presuit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be brought in court." *Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996). A plaintiff's failure to comply with these requirements satisfies the latter two elements of the certiorari analysis because "[t]he statutes requiring presuit notice and screening cannot be meaningfully enforced postjudgment because the purpose of the presuit screening is to avoid the filing of the lawsuit in the first instance." *Shands Jacksonville Med. Ctr., Inc. v. Pusha*, 254 So. 3d 1076, 1080 (Fla. 1st DCA 2018) (alteration in original) (quoting *St. Joseph's Hosp., Inc. v. Doe*, 208 So. 3d 1200, 1201-02 (Fla. 2d DCA 2017)); *see also Univ. of Fla. Bd. of Trs. v. Carmody*, 372 So. 3d 246, 253 (Fla. 2023) ("[A] district court can grant certiorari

review to verify that the plaintiff submitted the corroborating affidavit of an expert witness."); *Williams*, 62 So. 3d at 1137 (recognizing that a district court would have been correct in granting certiorari review "to determine whether [the plaintiff] complied with the procedural presuit requirements in terms of submitting a corroborating affidavit").

The question presented by the petitions in this case is whether the claims against Dr. Burley, Nurse Rice, and Lee Health constitute medical malpractice claims and thus are subject to the presuit requirements in chapter 766. We answer that question in the affirmative and hold that the trial court's ruling to the contrary was a departure from the essential requirements of the law for which certiorari relief is appropriate.

Section 766.106(1)(a) defines a claim for medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services." As the Florida Supreme Court has held, "for a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill." *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 305 (Fla. 2018). "This inquiry involves determining whether proving the claim requires the plaintiff to establish that the allegedly negligent act 'represented a breach of the prevailing professional standard of care,' as testified to by a qualified medical expert." *Id.* at 311-12; *see also Joseph v. Univ. Behav. LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA 2011) ("The fact that a wrongful act

7

occurs in a medical setting does not necessarily mean that it involves medical malpractice. The wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill." (citations omitted)); *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006) ("To be a [medical] malpractice claim, a wrongful act must be directly related to the improper application of medical services and the use of professional judgment or skill.").

In the case at hand, the misconduct is alleged to have occurred in the emergency department of a hospital during the course of what Karlsson represented to be a legitimate and necessary medical examination after consulting with the on-call urologist. The amended complaint alleges in specific detail how Karlsson allegedly performed the examination in an inappropriate manner, refused Doe's requests to consult her gynecologist and to locate a female provider, and ignored Doe's repeated pleas to stop. Dr. Kane's affidavit, which was attached to the notice of intent served on Karlsson, further details all the ways in which Karlsson allegedly deviated from the applicable standard of care in conducting the examination and in his treatment of Doe when she came to the emergency room.[4] Based on these allegations, it is clear that Karlsson's alleged misconduct arose from the rendering

---

[4] The fact that the Does served a notice of intent with a corroborating affidavit on Karlsson at least suggests they also believed their allegations against Karlsson fell within the scope of chapter 766.

of medical care or services and thus falls within the statutory definition of a claim for medical malpractice.

The authorities cited by the Does in defense of the trial court's ruling are distinguishable in that they do not involve allegations of misconduct by a provider under the guise of a legitimate medical exam or procedure but rather involve misconduct that was completely separate from the provision of medical services. *St. Joseph's Hosp.*, 208 So. 3d at 1201-02 (plaintiff alleged she was sexually assaulted while in hospital's mental health facility by employee who was able to enter and exit her room several times at night without supervision, and "[n]othing about the[] allegations . . . involved medical care or services"); *Burke v. Snyder*, 899 So. 2d 336 (Fla. 4th DCA 2005) (plaintiff receiving treatment for head and jaw pain alleged she was violently assaulted by physician who suddenly, unexpectedly, and forcefully shoved his hand into her genitals); *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So. 2d 636 (Fla. 3d DCA 1994) (plaintiff receiving periodontal treatment alleged she was sexually molested by dentist after she was given anesthesia); *Buchanan v. Lieberman*, 526 So. 2d 969, 972-73 (Fla. 5th DCA 1988) (holding that alleged sexual battery did not constitute medical malpractice where "the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office" and there were no allegations that the doctor engaged in such conduct "under the guise of medical diagnosis, treatment[,] or care").

The Does argue that even if Karlsson's alleged misconduct constitutes medical malpractice, that would not convert their claims alleging derivative or vicarious lability against Dr. Burley, Nurse Rice, and Lee Health into malpractice claims. We disagree. A claim alleging derivative or vicarious liability based on the improper performance of a medical examination by a physician assistant is still a claim "arising out of the rendering of . . . medical care or services." § 766.106(1)(a); *see also Weinstock v. Groth*, 629 So. 2d 835, 838 (Fla. 1993) ("[T]he proper test for determining whether a defendant is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1)."). Nothing in the statutory definition requires that a "claim for medical malpractice" must arise out of the rendering of medical or services *performed by that defendant*. *See Lawnwood Med. Ctr., Inc. v. Seeger*, 990 So. 2d 503, 512 (Fla. 2008) (noting that courts "are not at liberty to add words to the statute that were not placed there by the Legislature." (quoting *State v. J.M.*, 824 So. 2d 105, 111 (Fla. 2002))).

Moreover, a review of the allegations against Dr. Burley, Nurse Rice, and Lee Health reflects that each of those claims hinges on a deviation by Karlsson from the applicable standard of care in his treatment of Doe. The Does allege that Dr. Burley failed to adequately supervise, train, or monitor Karlsson in providing treatment that met the medical standards of care and that he knew or should have known that Karlsson was unfit, incompetent, or inadequately trained to provide the necessary

10

medical care. The Does further allege that Dr. Burley is vicariously liable under section 458.347, Florida Statutes (2022), which allows a physician assistant to perform medical services delegated by a supervising physician and provides that a supervising physician "is liable for any acts or omissions of the physician assistant acting under the physician's supervision and control." § 458.347(14). As to Nurse Rice and Lee Health, they allege that Nurse Rice knowingly or recklessly made false statements to Doe concerning material facts about her necessary medical treatment, that Doe justifiably relied on those statements in initially relenting to the vaginal exam, and that Lee Health, as Nurse Rice's employer, was vicariously liable for Nurse Rice's acts or omissions.[5]

Accordingly, because each of the claims at issue arose directly from Karlsson's rendering of medical services to Doe, they are medical malpractice claims which required compliance with the presuit notice requirements in chapter 766. As the trial court previously found, the notice of intent the Does served on Karlsson was insufficient as to Dr. Burley because Dr. Kane's corroborating affidavit did not meet the "same specialty" requirement set forth in section

---

[5] The analysis is the same for the loss-of-consortium claims, which necessarily flow from the claims alleging injury to Jane Doe. *See Faulkner v. Allstate Ins. Co.*, 367 So. 2d 214, 217 (Fla. 1979) ("[A spouse's] claim for loss of consortium is derivative in nature and wholly dependent on [the injured spouse's] ability to recover."); *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971) (explaining that a claim for loss of consortium "is a derivative right and [a spouse] may recover only if [the injured spouse] has a cause of action against the same defendant").

766.102(5)(a). Additionally, the Does failed to provide the notice of intent or the corroborating affidavit to Nurse Rice or Lee Health, and there was no mention of Nurse Rice, either by name or job description, in the affidavit. Therefore, the claims at issue should have been dismissed. We grant the petitions and quash the denial of Petitioners' motions to dismiss as it pertains to the claims against Dr. Burley, Nurse Rice, and Lee Health.

PETITIONS GRANTED; ORDER QUASHED.

BROWNLEE and PRATT, JJ., concur.

Jamie Billotte Moses, of MMPO Defense – Florida, Orlando, for Petitioners, Cape Coral Emergency Physicians, LLC, Marten Karlsson, and Keith Burley.

Michael R. D'Lugo, of Wicker Smith O'Hara McCoy & Ford, P.A., Orlando, for Petitioners, Lee Health System, Inc., and Shannon Rice.

Megan E. Shaw and Joseph E. Parrish, of Parrish & Goodman, PLLC, Fort Myers, for Respondents, Jane Doe and John Doe.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF FILED