POLEN, J.
 

 Appellant, Lionita Coleman, appeals the final order of the trial court granting summary judgment in favor of appellee, Grandma’s Place, Inc. We find that the trial court erred in its granting of Grandma’s Place’s motion for summary judgment, as factual disputes exist in this case. Rather than granting summary judgment, the trial court should have allowed a jury to decide on these facts. Accordingly, we reverse the trial court’s order and remand this case for jury determination of the facts.
 

 In October of 2005, Coleman was approached by Barbara McMillin of KidSanc-tuary (now referred to as “Grandma’s Place, Inc.”) and was told that the facility was looking for a program director. The program director was responsible for activities of the children, as well as the
 
 *931
 
 scheduling of all doctor appointments for the children while they were residents of Grandma’s Place. Coleman interviewed with two supervisors from the facility, Barbara McMillin and Suzanne Maurno, and was offered the position on the spot.
 

 In April of 2006, Coleman began expressing concerns to her superiors within Grandma’s Place about possible Health Insurance Portability and Accountability Act (“HIPAA”) violations by the facility. Coleman’s main concern with the operation of Grandma’s Place was that the facility’s volunteers knew as much about the children as the employees. Maurno admittedly recognized that this was the scenario at the facility, thus a violation of HIPAA. In response to Coleman bringing this issue to the attention of McMillin and Maurno, a meeting was held so all of the facility’s employees could be trained on HIPAA requirements. Maurno did not attend this meeting. Coleman later stated that she believed one of the reasons she was terminated from her position at Grandma’s Place was because of these concerns she raised internally.
 

 In June of 2006, as a Department of Children and Families imposed task, Coleman transported one of the children from Grandma’s Place to Pediatric Associates for medical attention. The doctor gave Coleman oral orders that if the child, B.W., suffered from vomiting, diarrhea, or an increased temperature that he should be taken to the emergency room. The next afternoon, Coleman called Grandma’s Place from her home to check on B.W.’s status and was informed that earlier he had diarrhea and an increased temperature, but he was now “okay.” Regardless of B.W.’s current status, Coleman went to Grandma’s Place to take B.W. to the emergency room, pursuant to the doctor’s orders.
 

 After B.W. was admitted to the hospital, Coleman returned to Grandma’s Place where she spent the night in one of the occupied children’s rooms. She had slept in children’s rooms before and was never reprimanded for it in the past, even after discussing it with McMillin. In fact, months before the B.W. incident, there were sleeping chairs in the children’s rooms for employees, but they were removed when McMillin and Maurno visited other facilities and realized no one else offered that option to employees. Coleman was under the impression that the removal of the chairs was simply to keep overnight employees from resting while they were supposed to be working. Retrospectively, Coleman did admit an understanding that sleeping in a child’s room could raise an issue, but she was unable to go home late at night and return to the facility early in the morning, so it seemed like the most logical solution at the time.
 

 Shortly thereafter, Coleman complained to Maurno again, this time about Grandma’s Place’s failure to tend to B.W.’s medical needs. During her discussion with Maurno, Coleman told her that if anything happened to B.W., the State would close the facility down. Maurno stated that neither she nor McMillin thought the child’s condition was serious enough for emergency medical attention, despite undisputed evidence that doctor’s orders required B.W. to be taken to the emergency room upon the occurrence of certain conditions.
 

 Coleman’s eventual termination allegedly stemmed from two vehicular accidents in which she was involved. Grandma’s Place’s van was typically used by Coleman and other employees to transport the children to their appointments. Early in her employment with Grandma’s Place, Coleman would use her own vehicle because of a 2003 accident that raised her personal insurance and would have affected Grand
 
 *932
 
 ma’s Place’s as well. On July 11, 2006 and July 17, 2006, Coleman was in two minor accidents in the company van. In both of these accidents, no children were harmed and no police reports were written. Coleman offered to pay for the scrapes on the van, which was the extent of the damage.
 

 In addition to the accidents, there was also a reported incident where a file was missing from the facility and Maurno believed Coleman, in violation of policy, removed the file and returned it once she was questioned about it. Though there was no proof that Coleman was the person who returned it, Maurno stated that employees saw her walk out with a file and a report was generated for Coleman’s personnel file based on the employee accusations. However, the names of the employees who reported the matter and the specific details therein are now unknown because Coleman’s personnel file is missing items.
 

 Coleman’s employment with Grandma’s Place was terminated on July 18, 2006. In July, Coleman filed a lawsuit alleging unlawful retaliation and wrongful termination of employment. Coleman believed that if the two minor accidents had not occurred, McMillin and Maurno would have looked for some other reason to terminate her employment because they were angry with her about her internal complaints, regarding HIPAA violations and B.W.’s healthcare, and were looking to retaliate.
 

 Grandma’s Place filed a motion for summary judgment on January 27, 2010. Grandma’s Place attached to the motion: an affidavit of Jackeline Alvarez, house mother of Grandma’s Place; the termination letter from Maurno to Coleman, dated July 18, 2006; and Coleman’s answers to Grandma’s Place’s interrogatories. Coleman failed to respond to the motion for summary judgment and did not attend the hearing on the motion. The trial court entered a final order granting summary judgment in favor of Grandma’s Place. Coleman filed a motion for rehearing, which was opposed by Grandma’s Place and then denied by the trial court. This appeal followed.
 

 “ ‘The standard of review of an order granting summary judgment is de novo.’ ”
 
 Patten v. Winderman,
 
 965 So.2d 1222, 1224 (Fla. 4th DCA 2007) (quoting
 
 Mobley v. Gilbert E. Hirschberg, P.A.,
 
 915 So.2d 217, 218 (Fla. 4th DCA 2005)). The movant carries the burden of showing that no genuine issue of material fact exists, making summary judgment appropriate.
 
 Patten,
 
 965 So.2d at 1224. “ ‘If the evidence raises any issue.of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.’ ”
 
 Id.
 
 (quoting
 
 Moore v. Morris,
 
 475 So.2d 666, 668 (Fla.1985)).
 

 Coleman alleged Grandma’s Place’s motion for summary judgment was insufficient and should have given rise to a denial of the motion. We disagree as to the insufficiency of the motion for summary judgment. Coleman set forth several mer-itless arguments for this court to consider during its review of the trial court’s order and presented only one infirmity, which was not fatal to the motion.
 

 Under rule 1.510(e), Florida Rules of Civil Procedure, affidavits must be based on personal knowledge, set forth facts which would be admissible in evidence, and show “the affiant is competent to testify to the matters stated therein.” Fla. R. Civ. P. 1.510(e). All documents referenced in the affidavit must be sworn or certified and attached to the affidavit. Fla. R. Civ. P. 1.510(e). It is within the court’s discretion to allow supplemental evidence for the affidavits. Fla. R. Civ. P. 1.510(e).
 

 Coleman argued that the affidavit of Jackeline Alvarez is legally insufficient and violates the requirements of rule
 
 *933
 
 1.510(e). Alvarez did not have personal knowledge of all the matters in her affidavit, made evident by a statement that Alvarez has personal knowledge of the matters, and/or reviewed Lionita Coleman’s personnel file. Alvarez made it unclear as to what she had personal knowledge of and she failed to attach Coleman’s personnel file to the affidavit.
 

 Zoda v. Hedden
 
 out of the Second District Court of Appeal stands for the proposition that an affiant who uses public record to develop personal knowledge must attach certified copies of those public records to the affidavit, unless he is a custodian of the records and can authenticate the documents. 596 So.2d 1225, 1226 (Fla. 2d DCA 1992). In accordance with
 
 Zoda,
 
 Coleman believed that the order granting summary judgment should be reversed because the motion relied on insufficient support.
 

 The position of Grandma’s Place was that Alvarez was obviously competent to testify as an authorized employee of the facility.
 
 Topping v. Hotel George V
 
 out of the Second District Court of Appeal supports Grandma Place’s argument by stating that employees have personal knowledge of the records and files at a business and, as such, are competent to testify as to matters related to the files. 268 So.2d 388, 389 (Fla. 2d DCA 1972). Further, Grandma’s Place responded to Coleman’s reliance upon
 
 Zoda
 
 and provided that Alvarez’s affidavit was distinguishable because Alvarez supplied information about which Coleman had already testified. Grandma’s Place argued that, regardless of the possible insufficiency of Alvarez’s affidavit, it did not rely on the affidavit to establish facts and, instead, only cited the affidavit to supplement Coleman’s personal testimony about her termination date and second car accident.
 

 We agree that the general information in Alvarez’s affidavit was discussed in the depositions of Coleman and Maurno. However, the details pertaining to the information Alvarez supplied were not all consistent with Coleman’s deposition testimony. Accordingly, to comply with rule 1.510(e), the personnel files and other documents upon which Alvarez relied should have been sworn and attached to the affidavit because the information conflicted with that which was already on file with the court.
 

 As such, the affidavit was insufficient and should not have been relied upon by the trial court in reaching its decision to grant summary judgment in favor of Grandma’s Place. This particular insufficiency, however, does not render the entire motion for summary judgment insufficient because other factors were considered by the court in reaching its decision.
 
 Cf. Williams v. Henderson,
 
 779 So.2d 450, 451 (Fla. 2d DCA 2000) (providing that the trial court’s sole reliance on an insufficient affidavit in granting summary judgment would be improper).
 

 Despite the sufficiency of the motion for summary judgment, we agree with Coleman that factual disputes exist in this case, making summary judgment improper.
 
 Taylor v. Mem’l Health Sys., Inc.,
 
 770 So.2d 752, 754 (Fla. 5th DCA 2000) (stating that a court may vacate summary judgment upon the existence of factual disputes).
 

 Alvarez’s affidavit mentions several instances of misconduct by Coleman, aside from .the aforementioned car accidents, which allegedly contributed to her termination. As discussed above, when asked during her deposition about these allegations, Maurno was unable to offer specific examples of misconduct because she claimed papers were missing from Coleman’s personnel file which would have refreshed her memory about these occurrences. These other alleged acts of mis
 
 *934
 
 conduct by Coleman included: sleeping in children’s rooms; removing children’s files from the premises; and faxing unauthorized, confidential information about the children to Walgreens. Coleman adamantly objected to each of these allegations, stating that: she was never reprimanded for spending the night in a child’s room and that others did the same thing; that no one ever saw her take nor return the files so the accusations were fruitless; and she faxed information that was authorized and advised by the auditor to a medical provider.
 

 Assuming these facts are true, it is clear that there were reasons, outside of possible retaliation, for Coleman’s employment with Grandma’s Place to be terminated. On the other hand, if those accusations are false, it is possible Grandma’s Place would not be able to satisfy its burden of showing its termination of Coleman was legitimate and non-retaliatory. The occurrences of those events listed in Alvarez’s affidavit remain in dispute and each party’s ability to successfully prove its case is materially affected as a result.
 

 Though, while Grandma’s Place filed a sufficient motion for summary judgment, disputed material facts which both parties are using to satisfy their burdens existed. It is clear to this court that the trial court facially denied Coleman’s motion for rehearing while there were material issues of fact present, giving rise to a denial of a motion for summary judgment. Therefore, we find that the trial court’s decision to grant summary judgment should be reversed and the case remanded for jury determination of the facts in dispute.
 

 Reversed.
 

 WARNER and CONNER, JJ., concur.